Marie L. SHIPP *v*. BELL & ROSS
ENTERPRISES, Inc. et al

73-218                                          505 S.W. 2d 509

Opinion delivered February 25, 1974

*W. B. Howard*, for appellant.

*Tinnon, Crain & Luttrell*, by: *John A. Crain*, for appellees.

CONLEY BYRD, Justice. Appellees C. Quenton Bell and Wesley E. Ross brought this action for specific performance of an alleged oral and written agreement with appellant Marie L. Shipp to convey to them an undivided two-thirds interest in a forty acre tract of land, hereinafter referred to as the "Morrison tract". Appellant pleaded the statute of frauds as a defense and also counterclaimed for a third of the profits realized by Bell and Ross in the purchase and sale of a 360 acre tract, hereinafter referred to as the "Williams tract". The trial court found against appellant upon both the counterclaim and the specific performance issue. With respect to the latter the trial court held:

> ". . .The court holds that the undisputed evidence oral agreement and written memorandum, reflect that Mrs. Shipp was acting for herself and as agent for Mr. Bell and Mr. Ross in negotiating the purchase of the forty acre tract from the Morrisons, and that because of this agency and trust relationship the statute of frauds is not applicable. Secondly, it is clear in examining the offer and acceptance with the Morrisons along with the memorandum signed by Mrs. Shipp that the agreement among Shipp, Bell and Ross to purchase the property was to be performed within one year and for this reason the statute of frauds does not apply. Thirdly, even if the statute of frauds were deemed to be applicable, it is the opinion of the court that the Shipp memorandum, the down payment check furnished by Bell and Ross and the offer and acceptance signed by the Morrisons and Mrs. Shipp combined together are sufficiently definite to satisfy the statute of frauds."

For reversal appellant contends:

> "1. The trial court erred in ordering appellant to convey two-thirds of the forty acre tract to appellees in-

stead of an undivided one-tenth, for the reason that appellees were barred by the statute of frauds.

"2. The trial court erred in denying appellant a recovery of one-third of the profits realized by appellees' sale of the three hundred and sixty acre tract of which appellant was equitable owner of an undivided one-third interest."

Bell and Ross here concede the fact the contract was to be performed within one year will not prevent the application of the statute of frauds to the contract in question. They do insist, however, that a relationship of trust and confidence existed between them and Mrs. Shipp upon which a constructive trust should be imposed and that the memorandum signed by Mrs. Shipp together with their check for the down payment and the correspondence from her attorney was sufficient to satisfy the statute of frauds. Ark. Stat. Ann. § 38-101 (Repl. 1962).

The record shows that Bell and Ross were the sole stockholders in Bell and Ross Enterprises Inc., hereinafter referred to as the "corporation". The corporation was subdividing a tract of land that had been platted as Holiday Hills Estates. On January 21, 1969, appellant, a real estate broker, entered into an exclusive agency contract with the corporation to sell lots in Holiday Hills Estates. Under date of July 7, 1970, she obtained an offer from Glen F. and Opal L. Morrison through their attorney Roy Danuser to purchase the 40 acre Morrison tract. There was some discussion between Bell and Ross and Mrs. Shipp about whether Bell and Ross would join in the purchase of the Morrison tract. As a result of those discussions Bell and Ross agreed to join in the purchase of the property and gave Mrs. Shipp $200 for the ea. nest money after she had executed the following handwritten agreement, to-wit:

"I, Marie L. Shipp, on this day am acting on, as buyer of forty acres joining Holiday Hills Estates, belonging to Glen F. and Opal Morrison, for Quenton Bell, Wesley

E. Ross and myself, Marie L. Shipp, in equal ownership. I do hereby agree that upon completion of this transaction, I will deliver a Warranty Deed made to Quenton Bell, Wesley E. Ross and Marie L. Shipp. . ."

Thereafter, Roy Danuser would not authorize his clients to execute a warranty deed to Mrs. Shipp because of some title defects. Mrs. Shipp then elected under the offer and acceptance to acquire title insurance. For that purpose she retained William Nash, a Little Rock lawyer. After the commitment for title insurance was made, but before the conveyance from the Morrisons to Mrs. Shipp was executed, Bell and Ross sold the forty acre tract here involved to Resort Land Company. After Mrs. Shipp's exclusive agency with the corporation was terminated, she refused to convey the two-thirds interest to Bell and Ross. The latter tendered two-thirds of the $2000 purchase price for the lands but refused before trial to pay any part of Mr. Nash's expenses incurred by Mrs. Shipp in clearing the title.

In bringing their suit Bell and Ross at first alleged the tender of their two-thirds of the purchase price. After demurrers were sustained, they amended their complaint alleging that Mrs. Shipp was to obtain her one-third as compensation for acquiring the lands. During the trial both Bell and Ross retracted the latter pleading as erroneous.

Ross testified that on July 7, 1970, Mrs. Shipp was an employee of the corporation and that on or about that date there was an agreement between Mrs. Shipp and Ross and Bell concerning the acquisition of some land that was to be split three ways. The agreement, *supra*, was set forth in writing. Bell and Ross gave her a check for $200 as earnest money at that time.

On cross-examination Ross stated that the employment of Mrs. Shipp was by way of written document. Neither Ross, Bell nor the corporation had contributed anything to the expense of clearing up the title.

On redirect Ross stated that Mrs. Shipp had acted as agent for herself and Bell in acquiring other acreage. Admittedly this reference was to Plaintiff's Exhibit No. 3.

Mrs. Shipp was then called as an adverse witness. She testified that she only employed Mr. Nash to straighten out the title and for no other purpose. Over objections of her trial counsel, Bell and Ross were permitted to introduce a letter written by Mr. Nash to Mr. Danuser wherein Nash, among other things stated:

> "Mrs. Shipp is acting as agent for Quenton Bell, Mr. Wesley E. Ross, and herself, and upon tender of the deed will execute a proper deed or deeds of conveyance."

Mrs. Shipp admittedly did not object at the time to Mr. Nash's statement. On cross-examination she could not recall having received a copy of the letter but assumed that she received it if Mr. Nash said he sent it. Mrs. Shipp denied that she acted as agent for Bell and Ross in connection with Plaintiff's Exhibit No. 3 and stated that she acted as a conduit and witness thereto as a favor to Bell and Ross. Until she contacted her present counsel, she did not know that she was not bound by the handwritten agreement. At the time she wrote the handwritten agreement Ross and Bell were going to let her in on something else later. At the time of writing the exhibit in question, she intended to let Bell and Ross have a two-thirds interest in the property in question, but she changed her mind about this matter after her discharge.

Ross was recalled and he stated that there was no understanding that Mrs. Shipp was to have one-third interest in the Morrison tract for her services in connection with its purchase. The matter of the sharing of the purchase price is not mentioned in the Exhibit, and the Exhibit makes no reference as to how the purchase price was to be paid. The three apparently understood it, but it was not contained in the Exhibit. The only contract they had concerning the forty acres in question is contained in the Exhibit.

Bell stated that his and Ross's understanding with Mrs. Shipp was that she would pay one-third in cash. The original agreement provided that Mrs. Shipp would handle the buying of the forty acres. They were ultimately buying it individually. There was no agreement with the corporation as to what they would do with the land. The Exhibit was the only written contract with Mrs. Shipp. There never was an

oral contract. There was no agreement with Mrs. Shipp about the sale of her interest to Resort Land. Bell and Ross had discussed with their attorneys three or four avenues for dividing the property or selling it at public auction.

In his deposition Bell stated that any time Mrs. Shipp wanted to buy for the corporation she made a separate deal. In dealing with Mrs. Shipp, Bell and Ross dealt exclusively by written contract. With reference to the Morrison tract the terms of the contract are expressed in the Exhibit. There were no modifications or changes of that agreement. Bell recognized that on July 16, 1970, he, Ross and Mrs. Shipp accepted an offer to purchase the 360 acre Williams tract for $18,000. However, the agreement was consummated by a deed being placed in escrow conveying only to Bell and Ross. The reason Mrs. Shipp was not included in the deed was because she executed an instrument in writing that her one-third interest was to go to Bell. At the time she executed that writing, she was engaged in a controversy with the corporation claiming it owed her additional commissions. There was a discussion between Bell and Mrs. Shipp that since he only owned 50 per cent of the corporation, he could not compel Ross to do anything about paying the commissions. There was also a discussion that if Mrs. Shipp gave her one-third interest in the Williams tract to Bell, he would own two-thirds of the tract and Ross would thus have a minority interest. When Mrs. Shipp made the assignment, he kept his mouth shut, took the assignment and procured a conveyance to himself and Ross. The agreement on the Morrison tract was dated July 7, 1970, and the agreement on the Williams tract was dated July 16, 1970. Since Mrs. Shipp had agreed to allow Bell and Ross to purchase one-third interests in the Morrison tract, Bell felt it only fair to give Mrs. Shipp an opportunity to participate in the Williams tract. With reference to the Morrison tract the understanding was that the conveyance would be made to each of them as individuals rather than to the corporation.

Bell stated that at various times Mrs. Shipp would make demands for advances for money from the corporation. She would ask Bell rather than Ross, and Bell would go to Ross. After awhile it looked as though it irked Ross for Bell to relay such requests, and Bell finally told Mrs. Shipp to either ask

the two of them together or to make her request directly to Ross.

On cross-examination by his counsel at the taking of his deposition, Bell testified Mrs. Shipp told them from the beginning that it was her intention to act as agent for all three of them in acquiring the Morrison tract.

While claiming that he didn't remember Mrs. Shipp making any demands for commissions due her that they failed to pay, Ross readily admitted in his deposition that the corporation did not always account to her twice monthly as her contract with it required.

To support her counterclaim, Mrs. Shipp testified that she and Bell were paramours and that that relationship continued through this litigation until after she filed her counterclaim. Because of this relationship she trusted Bell when he told her she would get what was legally hers and that he would take care of her. The relationship between the tracts here in issue was that Bell and Ross proposed to her that if she would let them in on the Morrison tract they would let her in on the Williams tract. In July of 1970, the corporation owed her commissions that they had failed to pay under their contract with her. Bell explained to her that there was nothing he could do about the commissions owed because he and Ross were "50-50" in the corporation. Bell then made representations and suggestions to her that if he owned two-thirds of the Williams tract he would have the larger part of that tract and he would see that she got the commissions that were due. He also stated that after she got her commissions, he would see that she got back her interest in the Williams tract. As a result of those representations she executed the assignment of her one-third interest in the Williams tract to Bell.

On cross-examination Mrs. Shipp admitted that at the time she signed the offer and acceptance on the Williams tract it was agreed that she would pay for her portion of the Williams tract out of her commissions, but she had never made a tender on the Williams tract. She also admitted that she had filed two lawsuits for her commissions, but she had not mentioned the Williams deal prior to the filing of the

counterclaim here involved.

Roy Danuser testified that after he refused to let the Morrisons execute a warranty deed Bell called his office stating that he was not worried about the title and that he would pay $2000 for the land. That was the first time Mr. Danuser had heard of anybody in the deal other than Mrs. Shipp. At that time Bell did not ask for credit for the earnest money, but he did state he was not concerned about the title. When Mr. Danuser told Bell that the transaction was between Mrs. Shipp and the Morrisons, Bell then stated that Mrs. Shipp was acting for him.

The sale of the Williams tract to Resort Land resulted in substantial profits somewhere in the neighborhood of $75,-000.00.

### The Morrison Tract.

The written agreement dated July 7, 1970, does not meet the requirements of the statute of frauds because there is nothing in writing to show the price that Bell and Ross were to pay for their one-third interest. In *Wyatt* v. *Yingling*, 213 Ark. 160, 210 S.W. 2d 122 (1948), we pointed out that for a contract to satisfy the statute of frauds it is essential that the contract give all of the essential terms without resort to the terms of the oral contract. When all of the written evidence is considered here even assuming Mr. Nash's statements in his letters are binding on Mrs. Shipp, it is at once apparent that the written agreement does not contain the terms or the amount that Bell and Ross were to pay for their respective one-third interests. Both Bell and Ross admit this fact. Thus, if the trial court's order of specific performance is to be sustained it must be done upon the basis of a constructive trust.

In an effort to put Mrs. Shipp in the relationship of trust and confidence sufficient to support a constructive trust, Bell and Ross contend that they openly treated the corporation as a partnership. They also point to the acquisition of a third tract (the Allen tract), as shown by Plaintiff's Exhibit No. 3, and the statements in the letters of Mr. Nash that Mrs. Shipp was acting as their agent.

The record does not show how Nash obtained the information that Mrs. Shipp was acting as an agent for Bell and Ross. It is admitted by Bell and Ross that Bell called Nash. Mrs. Shipp says that she only employed Nash to perfect the title to the Morrison tract. Recognizing that an agent's authority to speak for his principal cannot be shown by the agént's out of court statement, Bell and Ross contend that because of Mrs. Shipp's failure to dispute Nash's statements Nash must be recognized as having apparent authority to make the statements. However, if we assume that Nash had apparent authority, the assertion that Mrs. Shipp was acting as agent for Bell and Ross must be weighed against the testimony of Bell and Ross that her services as an agent were gratuitous.

Plaintiff's Exhibit No. 3 upon which Bell and Ross rely to show that Mrs. Shipp acted as agent for them on other occasions refutes their contention. That Exhibit is an offer and acceptance form for the Allen tract between Allen and the Corporation. In that part of the form provided for the signature of the real estate agent, the term "(AGENT)" is marked out and, in the place thereof, the word "Witness" is typed in. All other provisions having to do with a real estate broker or salesman have been marked through.

The exclusive agency agreement with the corporation does not support the position of Bell and Ross for it only gives Mrs. Shipp the authority to *sell* the lots in Holiday Hills Estates.

Neither can we find any merit in Bell and Ross's contention they treated the corporation as a partnership. A corporation is an entity separate from its stockholders. *Banks* v. *Jones,* 239 Ark. 396, 390 S.W. 2d 108 (1965). The fact these stockholders each held fifty percent of the stock in the Corporation does not make it tantamount to a partnership. See *Atkinson* v. *Reid,* 185 Ark. 301, 47 S.W. 2d 571 (1932). The corporate existence cannot be so lightly regarded by its stockholders. Accordingly, they will not be permitted to subvert the corporate being at their whim for one advantage and disregard it for an inconsistent advantage.

"'A corporation is treated as an entity separate from its

stockholder or stockholders under all ordinary circumstances. Although courts have made exceptions under some circumstances this has been done where applying the corporate fiction "would accomplish some fraudulent purpose, operate as a constructive fraud, or defeat some strong equitable claim. . . ." Those who are responsible for the existence of the corporation are, in those situations, prevented from using its separate existence to accomplish an unconscionable result. In the present case, those who created the corporation in order to enjoy advantages flowing from its existence as a separate entity are asking that such existence be disregarded where it works a disadvantage to them. We do not consider it good policy to do so.' *Jonas* v. *State* (1963), 19 Wis. 2d 638, 644, 121 N.W. 2d 235, 238, 95 A.L.R. 2d 880." *Stebane Nash Co.* v. *Campbellsport Mut. Ins. Co.,* 27 Wis. 2d 112, 133 N.W. 2d 737, 743-744 (1965).

See also *Black & White, Inc.* v. *Love,* 236 Ark. 529, 367 S.W. 2d 427, 8 A.L.R. 3d 809 (1963), where we considered a similar aspect of this problem. We there held one corporation could not hide behind a sibling corporation to avoid tort liability. Such would be contrary to right and justice. "It is only when the privilege of transacting business in corporate form has been illegally abused to the injury of a third person that the corporate entity should be disregarded." *Rounds & Porter Lumber Co.* v. *Burns,* 216 Ark. 288, 290, 225 S.W. 2d 1 (1949). The principle of disregarding the corporate fiction is a two-way street; the existence of the corporation should be upheld rather than allow the stockholders to facilitate a wrong against one relying on it. See *Black & White, Inc.* v. *Love, supra;* 18 C.J.S. Corporations § 7(b).

To impose a constructive trust the law requires that the proof must be clear, cogent and convincing. *Leake* v. *Garrett,* 167 Ark. 415, 268 S.W. 608 (1925). On the record before us we cannot say that the proof as to Mrs. Shipp's alleged relationship of trust and confidence in the acquisition of the Morrison tract has been proven by clear, cogent and convincing evidence.

## The Williams Tract

Mrs. Shipp here argues that there was a special trust and confidence existing between her and Bell and that under the rule stated in *Gillespie* v. *Holland*, 40 Ark. 28 (1882), her gift to Bell was prima facie void. The general rule, however, is that where special trust and confidence exist between the parties to a deed, the gift to the party holding the dominant position is prima facie void. Thus, before she would be entitled to invoke the prima facie rule she must show that Bell was holding the dominant position. On that issue we cannot say that the evidence preponderates in Mrs. Shipp's favor. It certainly cannot be inferred from the illicit relationship.

Furthermore, Mrs. Shipp testified that when the deal was first entered into she was expected to pay her one-third part of the $18,000 purchase price. Admittedly, she did not pay any of the purchase price.

Of course before Mrs. Shipp could hold Bell and Ross liable on a constructive trust she would be required to prove her case by clear, cogent and convincing evidence.

While the issue has admittedly given us some concern, we cannot say that upon the whole record the trial court's finding that she voluntarily abandoned her interest in the property is contrary to a preponderance of the evidence.

So much of the decree as directed specific performance on the Morrison tract is reversed and remanded with directions to enter a decree awarding to Bell and Ross only the admitted one-tenth interest therein. Appellant is awarded all costs of this appeal.