Matthew **VOGT**, Plaintiff–Appellant,

v.

Vernon **DACE** and Sharon Dace, Defendants–Respondents.

No. 54322.

Missouri Court of Appeals, Eastern District, Division Two.

Dec. 27, 1988.

Lewis & Rice, Richard A. Wunderlich, St. Louis, for plaintiff-appellant.

Eckelkamp, Eckelkamp, Wood & Kuenzel, Steven P. Kuenzel and James W. McGettigan, Washington, for defendants-respondents.

KAROHL, Judge.

This appeal arises after a directed verdict for defendant property owners in an action brought by Matthew W. Vogt to recover damages for personal injuries sustained when he fell through a hole in the front porch of the home of Vernon and Sharon Dace. The court granted the Daces' motion for directed verdict filed at the close of plaintiff's case.

Matthew Vogt appeals the judgment for defendants on two grounds: 1) the trial court erred in finding as a matter of law Matthew Vogt was a trespasser and not a licensee or invitee, and as such was not owed a duty of due care by the Daces; 2) the trial court erred in directing a verdict for defendants where plaintiff's evidence was sufficient to make a submissible case of negligence against the Daces.

In reviewing a directed verdict at the close of plaintiff's case, this court must consider the evidence and all reasonable inferences therefrom in the light most favorable to Matthew Vogt to determine whether he made a submissible case. *Singleton v. Charlebois Const. Co.*, 690 S.W.

2d 845, 847 (Mo.App.1985) (relying on *Rustici v. Weidemeyer*, 673 S.W.2d 762, 765 (Mo. banc 1984)). In this light plaintiff's evidence proved the following. On the evening of November 20, 1980, Vogt participated in a church scavenger hunt. Busses transported teenage participants to the vicinity of various church members' homes. Participants did not know the identities of the families who held clues. However, they knew that active members in the church would open their homes for such activity. The Daces were an active family in the church to which both they and Vogt belonged. When Vogt arrived in the vicinity of the Daces' home, he noticed a light in their home and decided to check for clues.

Two weeks prior to the church scavenger hunt Vernon Dace was repairing his front porch. He removed rotten boards and created a hole. Vernon Dace left the resulting hole open. Initially, Vernon Dace strung a sign attached to small rope across the entrance. The sign stated "Danger, hole in porch." The sign blew off the porch prior to the night of Vogt's fall. Both Sharon and Vernon Dace admitted they were aware that the sign had blown off the porch prior to the night of the scavenger hunt.

Before the evening of the scavenger hunt, Vogt had visited the Daces' home as a social friend. He had played tennis with both Sharon and Vernon Dace in the past.

As Vogt approached the front porch and began ascending approximately six stairs, he noticed a small rope stretched across the porch between the entrance pillars. He testified that the rope hung approximately six inches above the floor. He assumed that the Daces' young children, with whom he was familiar, had placed it there. The porch light was off. Shadows from the half-wall enclosure and roof darkened the porch area. Vogt knew nothing about, and did not discover, the hole on the porch floor before he fell in the hole.

Vogt stepped over the rope at the top of the stairs and fell into the hole. He caught himself by his arms and shoulders on the

remaining porch floor. He, therefore, did not fall to the ground under the porch floor. However, Vogt's right shoulder was dislocated in the fall and he sustained severe and permanent injuries to his shoulder, back and neck.

The trial court concluded the Daces owed no duty to Vogt because he crossed over the rope on the stairway. While the trial court recognized that, generally, Vogt would have implied consent to come on the porch, the trial court stated,

> To me the lynchpin in this law suit is: there was *a clear signal* that at least temporarily the permission of the possessor of the land to walk across the porch to the citizens of Sullivan was withdrawn. The evidence was that although the *plaintiff thought it* was the kid's rope, it was a rope. The porch was roped off. *Clearly sending the message* to any thinking person in the community that they shouldn't go on the porch. To me that changes the status of the plaintiff, legally to that of a trespasser.... [B]ecause the plaintiff was a trespasser, the law of this state is that the landowner or possessor has no duty to the trespasser. (Our emphasis).

In sum, the trial court determined that the rope withdrew any existing implied consent.

In Vogt's first point he contends the trial court erred in entering judgment in favor of the Daces in finding as a matter of law that he was a trespasser and not a licensee or an invitee, and was, therefore, not owed a duty of due care by the Daces. According to the *Restatement (Second) of Torts*, (1965), Section 330:

> ... [A] licensee is a person who is privileged to enter or remain on land only by virtue of the possessor's consent. A manifestation of assent to enter by a possessor may be created by ... customs prevailing in the community. If there is a local custom for possessors of land to permit others to enter it for a particular purpose, residents in that locality and others knowing of the custom are justi-

fied in regarding a particular possessor as conversant with it and, therefore, in construing his neglect to express his desire not to receive them as a sufficient manifestation of a willingness to admit them.... Familiar intimacy may also justify the assumption of consent to such visits as friends customarily paid to one another.

■ This section suggests Vogt had at least licensee status when he approached defendants' front door by the front steps and porch. He was a social friend of the Daces and had been welcome in their home before. He had no reason to believe that he would not be welcome on this visit. He also reasonably may have assumed that the Daces were participants in the scavenger hunt, and anticipated visitors that evening.

Moreover, the trial court recognized that implied consent existed between the Daces and Vogt. A previous relationship existed such that the Daces welcomed Vogt on their property. The trial court did not recognize any significance in the admitted facts that: (1) the Daces were aware the warning sign they had posted to prevent such injuries had blown away prior to the evening in question; (2) while one light burned in the home, the porch was dark and no signs existed to warn Vogt of the porch hole; and, (3) the rope at the top of the stairs was only six inches above the floor. Vogt testified that it looked like a jump rope to him and he assumed it was placed there by the Daces' children. What the trial court considered "a clear signal" was not so clear as to be a warning as a matter of law. These facts, singularly and collectively, considered in a light most favorable to plaintiff, leave an unresolved question of fact: whether defendants had warned visitors, including plaintiff, that they were not invited or permitted to go up the front stairs and across the porch.

According to our standard of review, we must reverse the decision of the trial court where we find its conclusion clearly erroneous. We find that sufficient evidence existed from which a jury could find that

Matthew Vogt was, at least, a licensee when he reached the porch. Plaintiff was not a trespasser as a matter of law. The Daces did not provide a warning so clear and evident to withdraw any implied consent that existed for Vogt to approach their front door. Plaintiff was entitled to consideration by the jury on these issues, providing the evidence was sufficient to support a claim for personal injuries as a licensee.

Vogt's second point states he made a submissible case of negligence, and the trial court erred in entering judgment in favor of the Daces pursuant to their motion for directed verdict filed at the close of Vogt's evidence. The duty owed to Vogt, as a licensee, is set forth in the *Restatement (First) of Torts*, § 342 (1934), adopted by our Supreme Court in *Wells v. Goforth*, 443 S.W.2d 155, 158 (Mo. banc 1969). *See, Brown v. Lesh*, 604 S.W.2d 636, 638 (Mo.App.1980).

█ In *Wells*, the Supreme Court of Missouri adopted the rule stated in *Restatement of Torts*, § 342 (1934):

A possessor of land is subject to liability for bodily harm caused to gratuitous licensees by a natural or artificial condition thereon if, but only if, he

(a) knows of the condition and realizes that it involves an unreasonable risk to them and has reason to believe that they will not discover the condition or realize the risk, and

(b) invites or permits them to enter or remain upon the land, without exercising reasonable care

(i) to make the condition reasonably safe, or

(ii) to warn them of the condition and the risk involved therein.

A landowner is not subject to liability for bodily harm caused to a gratuitous licensee by a natural or artificial condition unless the landowner is himself aware of the condition. *Ferguson v. Ginn*, 652 S.W.2d 295, 302 (Mo.App.1983). In the instant case, the Daces admitted they created and were aware of the hole in their porch. The Dac-

es owed Vogt a duty to exercise reasonable care as to a dangerous condition known to them and not likely to be discovered by Vogt. *Singleton v. Charlebois Const. Co.*, 690 S.W.2d at 847. The Daces owed a duty to Vogt with respect to the dangerous condition—by either making the hole safe or by warning Vogt—because the Daces knew the hole existed, was unreasonably dangerous, and had reason to believe visitors, including Vogt, would not discover the danger. *Davis v. Jackson*, 604 S.W.2d 610, 612 (Mo.App.1980).

█ In the instant case, there was evidence from which the jury could have found the Daces failed to meet the requisite standard of care owed to Vogt as a licensee. First, the Daces failed to maintain the porch in a manner to prevent injury to Vogt, and knew the condition was dangerous. Second, the Daces failed to properly post the property or adequately warn Vogt of the dangerous condition. Third, the Daces failed to properly light the area to offer visitors an opportunity to see and avoid the danger.

The sole precautions taken by Vernon Dace to avoid injury to others were: (1) tying a small rope across the entrance to the porch, and, (2) posting a sign. Although, the Daces were aware that the sign came off, they did not replace it. Nothing further was done by the Daces to prevent injury. No boards or barriers were placed over or around the hole, or placed in front of the steps. No lights or reflectors were hung near the hole to illuminate the hazardous condition. The evidence could support a finding of a breach of duty owed plaintiff by defendants.

We reverse and remand for a new trial.

GRIMM, P.J., and GARY M. GAERTNER, J., concur.