**James T. HARTER, Jr., Appellant,**

v.

**OZARK–KENWORTH, INC., Respondent.**

**No. WD 49772.**

Missouri Court of Appeals,
Western District.

June 13, 1995.

Motion for Rehearing and/or Transfer to Supreme Court Denied Aug. 1, 1995.

Application to Transfer Denied
Sept. 19, 1995.

318

Christopher R. Williams, Kansas City, for appellant.

Joseph K. Lewis, Jr., Rodney K. Murrow, Kansas City, for respondent.

Before BRECKENRIDGE, P.J., and ELLIS and LAURA DENVIR STITH, JJ.

BRECKENRIDGE, Presiding Judge.

James T. Harter, Jr., filed a negligence action against Ozark–Kenworth, Inc. ("Ozark–Kenworth"), after he was allegedly injured on the company's premises. The trial court entered a summary judgment in favor of Ozark–Kenworth, and Mr. Harter now appeals, claiming that Ozark–Kenworth breached its duty of care by failing to provide the proper equipment.

The judgment is reversed and remanded.

In reviewing the trial court's order of summary judgment, the record is considered in the light most favorable to the party against whom judgment was entered, affording that party all reasonable inferences which may be drawn from the evidence. *ITT Commercial Finance v. Mid-Am. Marine,* 854 S.W.2d 371, 376 (Mo. banc 1993). The facts recited hereafter are in the light most favorable to Mr. Harter.

In June of 1987, Mr. Harter was helping his father deliver a load of four truck cabs to the Ozark–Kenworth facility in Springdale, Arkansas. His father transported the truck cabs—which were attached in a piggy-back fashion—while Mr. Harter followed in his own vehicle. They traveled with three other truck drivers and one other "chase car" driver who were transporting truck cabs to the same destination.

Mr. Harter's father was delivering the truck cabs in the course of his employment with Consolidated Transfer and Warehouse Co. ("CTW"). Mr. Harter, on the other hand, was not an employee of CTW. In his deposition, Mr. Harter explained that he accompanied his father on this trip as a favor, and that he saved his father the cost of air or bus fare by providing him with a vehicle for his return trip. Mr. Harter further explained that he was assisting his father because he lived at his parents' house and they were supporting him.

The truck cabs were being delivered for purchase and resale by Ozark–Kenworth. It was Ozark–Kenworth's policy that the drivers were responsible for undecking the trucks that they delivered. Ozark–Kenworth, however, provided the equipment to undeck the trucks, with the exception of a few hand tools carried by the drivers themselves. The equipment provided by Ozark–Kenworth included a tow truck with a hoist and chain.

Upon arriving at the Springdale facility on June 4, 1987, Mr. Harter began to assist in the process of undecking the truck cabs. According to Mr. Harter's deposition, he spent at least fifteen to twenty minutes looking for the chain which Ozark–Kenworth supplied for undecking the truck cabs, and in the process he asked several Ozark–Kenworth employees where he could find the chain. Mr. Harter stated in his deposition that the Ozark–Kenworth employees he talked to were either uninformed, unhelpful, or uncooperative when he inquired into the whereabouts of the chain. In a separate deposition, an Ozark–Kenworth employee stated that there were no instructions on where to find the chain for undecking the truck cabs.

After Mr. Harter's unsuccessful search, one of the other drivers offered a chain for Harter to use. Mr. Harter did not know if the chain belonged to the driver, or if the driver had obtained the chain from someone else. According to Mr. Harter, he was injured when the chain broke as he was undecking one of the truck cabs. In a separate deposition, an employee of Ozark–Kenworth stated that he did not believe that the chain which broke was one supplied by Ozark–

Kenworth because it was not as "heavy duty" as the log-chain owned by Ozark–Kenworth.

After Mr. Harter filed suit, Ozark–Kenworth filed a motion for summary judgment, claiming that it did not owe a duty of ordinary care to Mr. Harter because he was a mere licensee on its property, and that it was not liable for the act of a third party who supplied Mr. Harter with the chain which broke. The motion for summary judgment was granted by the trial court.

In his sole point on appeal, Mr. Harter claims that Ozark–Kenworth did owe him a duty of care which was breached by its failure to provide the proper chain for the undecking process. Therefore, Mr. Harter contends, the trial court erred by granting the motion for summary judgment.

■ As a preliminary matter, this court must address the conflict of laws issues raised by this case. Missouri follows the fundamental rule of conflicts that "a forum state will always apply forum procedure, but it will choose the applicable substantive law according to its own conflict of law doctrines." *Ernst v. Ford Motor Co.*, 813 S.W.2d 910, 921 (Mo.App.1991). With respect to the substantive law of torts, Missouri has adopted § 145 of the Restatement (Second) of Conflict of Law, which provides that the rights and liabilities of the parties are governed by the substantive law of the state with the most significant relationship to the occurrence and the parties. *Kennedy v. Dixon*, 439 S.W.2d 173, 184 (Mo. banc 1969).

■ Pursuant to § 145(2) of the Restatement, the most significant relationship is determined by considering the following factors, according to their relative importance:

(a) the place where the injury occurred;

(b) the place where the conduct causing the injury occurred;

(c) the domicile, residence, nationality, place of incorporation and place of business of the parties; and

(d) the place where the relationship, if any, between the parties is centered.

*Galvin v. McGilley Memorial Chapels*, 746 S.W.2d 588, 590 (Mo.App.1987). Applying this test to the case at bar, the rights and liabilities of the parties are governed by the substantive law of Arkansas, which is the place where both the injury and the conduct causing the injury occurred, and which is the place of business of Ozark–Kenworth.

■ Because this court applies the law of the forum to procedural issues, Missouri law governs our standard of review of the trial court's order of summary judgment. Under Missouri law, the moving party bears the burden of proving that it is entitled to summary judgment as a matter of law and that no genuine issues of material fact exist. *ITT*, 854 S.W.2d at 378. Where the movant is a "defending party," the movant "may establish a right to judgment by showing (1) facts that negate *any one* of the claimant's elements facts, (2) that the non-movant, after an adequate period of discovery, has not been able to produce, and will not be able to produce, evidence sufficient to allow the trier of fact to find the existence of *any one* of the claimant's elements, or (3) that there is no genuine dispute as to the existence of *each* of the facts necessary to support the movant's properly-pleaded affirmative defense." *Id.* at 381.

■ In their briefs on appeal, the parties debate the status of Mr. Harter as an invitee or licensee for the purposes of the rules governing premises liability. However, such a distinction is not pertinent to the issue of the duty of care in this case. The Arkansas Supreme Court has consistently held that when the condition of the premises has no causal connection to the plaintiff's injury, the duty owed the plaintiff is the standard duty of ordinary care, the plaintiff's status of invitee or licensee has no bearing upon the duty of care, and the status of the defendant as an owner or occupier of land is irrelevant.[1] *Ta-*

---

1. If this case were governed by the rules of premises liability, it would be error for a trial court to conclude that Mr. Harter was a licensee as a matter of law. A business invitee "is one who enters or remains on land for a purpose connected with the business dealings of the own-

er." *Young v. Paxton*, 316 Ark. 655, 873 S.W.2d 546, 549 (1994). A licensee, on the other hand, is "one who goes upon the premises of another with the consent of the owner for his own purposes and not for the mutual benefit of himself and the owner." *Id.*

*tum v. Rester,* 242 Ark. 271, 412 S.W.2d 293, 297–298 (1967); *Linxwiler v. El Dorado Sports Center, Inc.,* 233 Ark. 191, 343 S.W.2d 411, 413–414 (1961).

■ In the case at bar, the condition of the premises occupied by Ozark–Kenworth had no bearing upon the cause of Mr. Harter's injuries, and therefore the rules of premises liability do not apply. Under these circumstances, the appropriate theory of recovery is a claim of ordinary negligence on the part of Ozark–Kenworth, not a claim based upon the limited doctrine of premises liability.

■ In the context of a claim of ordinary negligence, the standard of care is ordinary care. *Dongary Holstein Leasing, Inc. v. Covington,* 293 Ark. 112, 732 S.W.2d 465, 468 (1987), *overruled in part on other grounds by Quinn Companies, Inc. v. Herring–Marathon Group, Inc.,* 299 Ark. 431, 773 S.W.2d 94, 95 (1989). Ordinary care means to guard against dangers that could have been, or reasonably should have been, foreseen. *Gann v. Parker,* 315 Ark. 107, 865 S.W.2d 282, 284 (1993). Under Arkansas law, one who assumes to act, even though gratuitously, becomes subject to the duty of acting carefully. *Haralson v. Jones Truck Line,* 223 Ark. 813, 270 S.W.2d 892, 895 (1954). In particular, where an owner has hired an independent contractor to perform work, if the owner undertakes to perform certain duties or activities and thereafter negligently fails to perform them or performs them in a negligent manner, the owner is liable. *Williams v. Nucor–Yamato Steel Co.,* 318 Ark. 452, 886 S.W.2d 586, 587 (1994).[2]

■ Summary judgment is not appropriate if there is any theory within the scope of pleadings, or within the broad scope of probable evidence (authorizing an amendment to the pleadings to conform to the proof) as revealed by the depositions, admissions or affidavits on file which, if believed by the trier of fact, would authorize a recovery. *Scott v. Thornton,* 484 S.W.2d 312, 314 (Mo. 1972). Applying this principle to the case at bar, summary judgment is inappropriate because the pleadings and depositions do contain a theory which could authorize a recovery. The petition for damages filed by Mr. Harter pleads negligence without specific reference to premises liability. Within the scope of Harter's pleadings and deposition evidence is a viable theory, i.e., that by voluntarily undertaking the task of providing the chain, Ozark–Kenworth assumed the duty of ordinary care in carrying out this task and, therefore, is liable to Mr. Harter if it was negligent in carrying out such duty.

Ozark–Kenworth has also not demonstrated that it is entitled to summary judgment as a matter of law by showing (1) facts which negate an element of Mr. Harter's cause of action, (2) that Mr. Harter will not be able to produce evidence sufficient to allow the trier of fact to find the existence of any element of Mr. Harter's cause of action, or (3) that there

---

While there was evidence in the record that Mr. Harter's participation in the delivery of truck cabs was solely for his own purposes, insofar as he was motivated by his desire to be helpful to a parent who was supporting him, there was also evidence in the record that his presence at the Springdale facility was of benefit to Ozark–Kenworth, since he was assisting in the delivery and undecking of truck cabs, which was a prerequisite to their resale by Ozark–Kenworth. Viewing the evidence in the light most favorable to Mr. Harter, there was sufficient evidence in the record from which a jury could find that Mr. Harter's presence on the premises was "connected with the business dealings of the owner" in a way that was "for the mutual benefit of himself and the owner" and that Mr. Harter was thus a business invitee as defined by *Young v. Paxton.* Mr. Harter was not a licensee as a matter of law, and he was thus entitled to the consideration of this issue by a jury. *Vogt v. Dace,* 762 S.W.2d

838, 840–41 (Mo.App.1988). (Whether an issue is to be decided by the trial court or by the jury is a procedural matter, *Hopkins v. Kurn,* 351 Mo. 41, 171 S.W.2d 625, 626–32 (1943), and therefore Missouri law, which is the law of the forum, applies.)

2. *Williams,* 886 S.W.2d 586, concerns liability for injuries to a contractor's employees, and Mr. Harter was not an employee of the independent contractor in the case at bar. However, Mr. Harter's non-employee status does not bar the application of the rule in *Williams* to his situation, as, under certain circumstances, an individual assisting an employee can come within the ambit of ordinary care due an employee when the owner of the premises acquiesces in the person's assistance and such assistance confers a benefit on the owner. *See Dorton v. Francisco,* 309 Ark. 472, 833 S.W.2d 362 (1992).

is no dispute as to the existence of all facts necessary to establish a properly-pleaded affirmative defense. *ITT,* 854 S.W.2d at 381. Mr. Harter presented the trial court with evidence sufficient to allow the trier of fact to find the existence of each element essential to his cause of action.

The law of negligence requires as essential elements that the plaintiff show that a duty was owed and that the duty was breached. *Young v. Paxton,* 316 Ark. 655, 873 S.W.2d 546, 549 (1994). With regard to the disputed element of whether Ozark–Kenworth assumed the duty of providing the chain, Harter filed deposition testimony that it was Ozark–Kenworth's policy to provide the hoist and chain which the drivers used to undeck the trucks. Whether Ozark–Kenworth undertook the task of providing the chain is, therefore, a question of fact precluding summary judgment.

Another disputed element of Harter's theory of negligence is whether Ozark–Kenworth's duty of care was breached by the failure of its employees to make a sufficient effort to ensure that Mr. Harter found the chain which Ozark–Kenworth provided as a matter of policy. Such a determination depends upon the related question of whether it was reasonably foreseeable that a failure to provide a proper chain would increase the risk of harm to Mr. Harter because, when he found himself without the expected equipment at the time of undecking the trucks, he could be compelled to make a last-minute resort to some other means of accomplishing his task, which would increase the risk that unsatisfactory equipment would be used.

The record in this case contains deposition testimony that Mr. Harter spent at least fifteen to twenty minutes looking for the chain which Ozark–Kenworth supplied for undecking the truck cabs; that during this time he asked several Ozark–Kenworth employees where he could find the chain; and that the Ozark–Kenworth employees he talked to were either uninformed, unhelpful, or uncooperative when he inquired into the whereabouts of the chain. There was also deposition testimony to the effect that there were no instructions on where to find the chain *for* undecking the truck cabs. Under these circumstances, the issue of whether there was conduct constituting a breach of care is a disputed question of fact.

In its brief on appeal, Ozark–Kenworth argues that, regardless of whether it owed Mr. Harter a duty of ordinary care, it still was not liable for any injuries suffered by Mr. Harter because an "owner of a premises is not liable for injuries caused by acts of third persons which were unauthorized or which it had no reason to anticipate and about which it had no knowledge." *Lovell v. St. Paul Fire & Marine Ins.,* 310 Ark. 791, 839 S.W.2d 222, 225 (1992). However, in the case at bar, there remains a question of fact as to whether Ozark–Kenworth had reason to anticipate that a failure to provide a proper chain would increase the risk of harm to someone undecking the trucks because he could be compelled to make a last-minute resort to some other means of accomplishing his task, which would increase the risk that unsatisfactory equipment would be used, and therefore *Lovell* is not controlling.

Accordingly, the judgment of the trial court is reversed, and the cause is remanded to the trial court for further proceedings consistent with this opinion.

All concur.