Jackie LOVELL And Keith Lovell, Individually and as
Parents and Natural Guardians of Taylor Keith Lovell, a
Minor *v.* ST. PAUL FIRE & MARINE INSURANCE
CO., Liability Insurance Carrier of Baptist Memorial
Hospital

92-306                                      839 S.W.2d 222

Supreme Court of Arkansas
Opinion delivered November 2, 1992

792

*Matthews, Sanders, Lisles, & Sayes*, by: *Marci Talbot Liles*, for appellants.

· *Laser, Sharp, Mayes, Wilson, Bufford & Watts, P.A.,* by *Richard N. Watts* and *Alfred F. Angalo, Jr.*, for appellee.

ROBERT L. BROWN, ·Justice. The appellants, Jackie Lovell and Keith Lovell, appeal individually and as the parents of their minor child, Taylor Keith Lovell, and contend that the circuit court erred in granting summary judgment to the appellee, St. Paul Fire & Marine Insurance Company. We affirm the judgment.

On August 31, 1990, appellant Jackie Lovell, who was seven months pregnant, went to Baptist Memorial Hospital in North Little Rock to pick up her friend, Terry Peeples, who was an employee of Baptist Hospital, for lunch. Jackie Lovell parked her car, leaving her two-year-old daughter inside, and entered the hospital to get Peeples. At about the same time, Bill and Dessie Herring, husband and wife, arrived at the hospital. Mr. Herring was driving. The Herrings had come to pick up some x-rays for Mrs. Herring, age 74, who had been experiencing dizziness and having problems with her balance. She had been referred to Baptist Hospital for tests. Mr. Herring parked the car in a loading zone in front of the main entrance to the hospital, left his wife in the car, and went inside to pick up the x-rays.

After waiting in the car for about ten minutes, Mrs. Herring got out. She walked over near the door to the hospital and stood leaning against the wall for another fifteen to twenty minutes. The Herring's car was blocking a principal entry to and exit from the hospital. Because of this, a Baptist Hospital employee, Tressie Pruss, asked Mrs. Herring to move her car. Pruss later testified

that Mrs. Herring appeared upset by the request, and Pruss told her not to worry about the car. Mrs. Herring testified at deposition that a loud-mouthed fellow told her to move her car.

A few minutes after the request and after the nurse had gone back inside, Mrs. Herring decided to move the car. No Baptist Hospital employees apparently were present at this time. At the same moment, Jackie Lovell and Terry Peeples came out of the hospital and headed towards Jackie Lovell's car. Mrs. Herring started her car and backed over Peeples. She then hit Lovell's car which caused the car's brake to disengage, and the car began to roll. Jackie Lovell testified that she started to chase her car because her daughter was inside. Mrs. Herring's car then ran over Lovell, pinning her beneath the car. Betty Jackson, an onlooker, ran up to Mrs. Herring's car and told her that Lovell was trapped beneath it. When Mrs. Herring did not respond, Jackson reached inside the car and set the parking brake.

Jackie Lovell was badly injured and her baby had to be delivered prematurely by C-section. While she was recuperating, Betty Jackson called to see how she was doing. Jackson said that during one conversation with both Jackie and Keith Lovell, they told her they were suing the hospital and that the hospital did not want to be liable. The Lovells told her that if she could remember having heard a hospital employee tell Mrs. Herring to move her car, it would help them in their lawsuit.

The Lovells filed suit against Mrs. Herring and St. Paul Fire & Marine Insurance Company as liability carrier for Baptist Hospital. The suit against Mrs. Herring was settled. In the suit against St. Paul, the discovery depositions of Betty Jackson, Terry Peeples, and several Baptist Hospital employees were taken. St. Paul then moved for summary judgment which the circuit court granted, finding as a matter of law that Baptist Hospital had not breached any recognized duty owed to Jackie Lovell and that the hospital should not have to insure that all persons on the premises were competent drivers. The court added that the imposition of such a duty was a legislative function rather than a judicial one.

On appeal, the Lovells urge that the circuit court erred in granting summary judgment in favor of the insurance company. We have often stated that summary judgment is an extreme

remedy which should be allowed only when there is no issue of fact to be litigated. *See, e.g., Cullpepper* v. *Smith*, 302 Ark. 558, 792 S.W.2d 293 (1990); *Saunders* v. *National Old Line Ins. Co.*, 266 Ark. 247, 583 S.W.2d 58 (1979). We need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Nixon* v. *H & C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes* v. *Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Harvison* v. *Charles E. Davis & Assoc.*, 310 Ark. 104, 835 S.W.2d 284 (1992); *Reagan* v. *City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991).

■ The circuit court decided the matter due to the absence of any legal duty. The question of what duty, if any, is owed by one person to another is always a question of law and never one for the jury. *Catlett* v. *Stewart*, 304 Ark. 637, 804 S.W.2d 699 (1992); *Keck* v. *American Employment Agency, Inc.*, 279 Ark. 294, 652 S.W.2d 2 (1983). The circuit court erred, however, according to the Lovells, in not finding that Baptist Hospital had a duty either to ascertain Mrs. Herring's competency or to warn other drivers and pedestrians on the hospital's premises that a danger existed. We agree with the circuit court that no such duty existed in this case.

Viewing the proof in the light most favorable to the Lovells, as we are required to do, we turn to the deposition testimony of Betty Jackson, who watched Mrs. Herring for thirty to thirty-five minutes between the time her car arrived in front of the hospital and the ensuing accident. She testified at deposition that it was obvious to her that Mrs. Herring was not fit to drive. Mrs. Herring appeared very unsteady on her feet, and her thick glasses made her appear almost blind. Jackson added that her nine-year-old son asked her if Mrs. Herring was blind. Initially, Mrs. Herring's condition did not move Jackson to help her, and she testified that after Mrs. Herring got out of the car and stood up, she looked "okay." Jackson then heard Baptist Hospital employees ask whom the car belonged to. Mrs. Herring answered, "It's mine."

She also heard employees make comments that the car needed to be moved. Specifically, she heard a nurse tell Mrs. Herring that she needed to move her car. Two or three minutes later, Jackson says Mrs. Herring walked over to her car and got in. Jackson testified that she realized Mrs. Herring needed help and she began running to assist, but she was too late. No hospital employee was present at the entrance when Mrs. Herring moved her car, although a nurse observed the accident from the top floor.

Under these circumstances, we can extract no duty on the part of Baptist Hospital to determine the capacity of Mrs. Herring to drive competently. Though Mrs. Herring appeared unsteady on her feet to Betty Jackson and her son, who watched her for an extended period of time, there is no testimony or proof of any kind to suggest that Baptist Hospital employees were aware that she suffered from any physical or mental infirmity. Nor is there any proof that the hospital employees were alerted in any way to the fact that Mrs. Herring possibly was unable to move her car. Mrs. Herring gave no verbal indication that she could not drive. Without such proof and a resulting awareness on the part of the hospital employees, there was no reason for those employees to assess her condition further and certainly no reason to warn other pedestrian or vehicular traffic on the hospital premises of an impending danger.

Absent the hospital's awareness of her condition or its assumption of control, we will not impress any legal duty on the hospital to act to protect others on the grounds. Mrs. Herring did not have a special relationship with Baptist Hospital such as master-servant. Nor did the hospital exercise the type of control over her to give rise to a legal duty to act with care. This comports with blackletter law. The owner of a premises is not liable for injuries caused by acts of third persons which were unauthorized or which it had no reason to anticipate and about which it had no knowledge. *See Magnolia Petroleum Co.* v. *Melville*, 202 Ark. 382, 150 S.W.2d 220 (1941); *Leonard* v. *Standard Lumber Co.*, 196 Ark. 800, 120 S.W.2d 5 (1938).

The appellants direct our attention to three cases to support their theory of the case. *See Karbel* v. *Francis*, 709 P.2d 190 (N.Mex. App. 1985); *Pamela L.* v. *Farmer*, 169 Cal. Rptr. 282 (1980); *Haralson* v. *Jones Truck Lines*, 223 Ark. 813, 270

S.W.2d 892 (1954). None of these cases sufficiently mirrors the facts of this case. In *Karbel*, security guards at a Polytechnical Institute directed an intoxicated driver to leave the campus, and that driver then injured a person off-campus. The issue was whether the security firm owed any duty to the person injured, and the New Mexico Court of Appeals held that it did due to the actual control asserted by the security guards over the intoxicated driver. In doing so, the appellate court reversed a summary judgment in favor of the security firm and stated:

> The common law also provides the source of a duty in such a situation based on actual control. The duty of one who takes charge of a third person whom he knows or should know to be likely to cause harm to others, if not controlled, is the duty to exercise reasonable care to prevent the person from doing harm.

709 P.2d at 193. The *Karbel* situation is distinguishable from the present case. There, the guards assumed actual control over a person obviously intoxicated who was likely to harm others. Here, there was no knowledge of impairment. Moreover, there was an insufficient assumption of control by the hospital employees. Direction to move her car by a nurse or "loud mouthed fellow" is not in the same category as security guards directing a drunk driver to leave a school campus. Whoever told Mrs. Herring to move the car then left the site, and Mrs. Herring decided to act on her own some minutes later.

The second case is *Pamela L. v. Farmer*. There, three girls who were sexually molested by the defendant sued him and his wife. The wife demurred on the basis that she owed no duty to the girls, and the trial court sustained the demurrer. The California Court of Appeal reversed, citing the fact that the wife had made matters worse by inviting the girls to their house to swim, telling their parents that the girls would be safe, and then leaving the premises, knowing all the time that her husband had molested children in the past. The court first referred to the general principle that a person ordinarily has no duty to control the conduct of a third party or to warn those endangered by such conduct in the absence of a special relationship with the third party or the victim. The court concluded, however, that the principle has no application where the defendant has made the

victim's position worse and has increased a foreseeable risk of harm by her actions. Again, these facts differ from what transpired in the present case. The hospital employees had no awareness of danger or reason to be aware that an enhanced risk of harm might result from their asking Mrs. Herring to move her car.

Finally, in *Haralson* v. *Jones Truck Lines* the driver of a truck signaled a second truck to pass him on a state highway which resulted in the death of a pedestrian who was walking on the left side of the highway. The trial court directed a verdict for the defendants, but this court reversed on the basis that a case for the jury had been made. We stated there that the real issue centered on whether the driver of the signaling truck owed any duty to the pedestrian. We concluded that he did since he chose to act, and having done so, he was under a duty to act carefully.

We are not convinced that requesting Mrs. Herring to move her car from a congested hospital entrance was the type of act that automatically created a duty on the part of the hospital. The same might not hold true under more dire circumstances where potential danger was clear and obvious to the acting party. In this case, though, there is nothing of record to suggest that the hospital employees knew that Mrs. Herring was in any way impaired in her driving prowess or that they should have known she was impaired. Only Betty Jackson, who observed Mrs. Herring for thirty to thirty-five minutes, had formed an opinion about her infirmity.

To hold that a duty exists under these circumstances would mean that the owner of a premises with a parking area must evaluate the condition of every driver who is requested to vacate that parking area. This would be required, according to the appellants' theory, even when the driver gives no indication, verbally or otherwise, that he or she is unable to drive effectively. We are unwilling to go that far when, as here, there was no apparent manifestation of potential danger.

We hold that no legal duty attached under these circumstances and that the circuit court did not abuse its discretion in granting summary judgment in favor of the appellee.

Affirmed.

GLAZE, J., not participating.