FORD MOTOR CREDIT COMPANY *v.* TWIN CITY BANK

94-1114                                          895 S.W.2d 545

Supreme Court of Arkansas
Opinion delivered April 3, 1995

*Smith & Nixon*, by: *W. Robert Nixon, Jr.*, for appellant.

*The Rose Law Firm, A Professional Association*, by: *Herbert C. Rule III* and *Steve D. Durand*, for appellee.

ROBERT L. BROWN, Justice. This case involves a dispute over the cash collateral of a debtor in bankruptcy (One Moore Ford, Inc.) and the claims to that cash collateral by two secured creditors — appellant Ford Motor Credit Company and appellee Twin City Bank ("TCB"). The trial court granted summary judgment in favor of one secured creditor, TCB. We conclude, however, that a material issue of fact remains to be decided, and we reverse the order of summary judgment and remand the matter for trial.

Prior to bankruptcy, Ford Motor Credit provided a wholesale line of credit for One Moore Ford, a car dealership in North Little Rock, and advanced the purchase money for its inventory of vehicles. Under this "floor plan" arrangement, One Moore Ford was expected to repay Ford Motor Credit after the retail sale of each vehicle by sending a check to the credit company for the amount advanced for the vehicle plus accrued interest. On or about December 17, 1990, checks payable to Ford Motor Credit and drawn by One Moore Ford on its account at TCB were returned due to insufficient funds. On or about December 20, 1990, One Moore Ford and Ford Motor Credit reached an oral agreement whereby One Moore Ford would continue to sell the vehicle inventory under the floor plan arrangement with a Ford Motor Credit representative on the dealership's premises. That representative would collect the amount advanced plus accrued interest for each sale. The surplus proceeds for the sale would then be available to One Moore Ford for use as operating expenses. On December 26, 1990, One Moore Ford set up an account at

Eagle Bank & Trust for the purpose of depositing the surplus proceeds. Claude Hill, former branch manager of Ford Motor Credit, stated in his deposition that the credit company agreed during December 1990 to allow One Moore Ford to retain the surplus proceeds from the sale of its vehicles. The reasons for the agreement were to provide One Moore Ford with operating capital and to prevent the liquidation of the business. Stan Lockhart, the current branch manager at Ford Motor Credit, corroborated this assessment in his deposition.

On January 14, 1991, One Moore Ford filed a petition for bankruptcy relief under Chapter 11 of the U.S. Bankruptcy Code and continued to operate the dealership as a debtor-in-possession. On January 16, 1991, One Moore Ford established a new bank account at Eagle Bank as a debtor-in-possession and transferred the balance of surplus proceeds, now cash collateral for the debtor's estate, from the previous Eagle Bank account into the new account. One Moore Ford, as debtor-in-possession, continued to deposit the surplus proceeds into this new account.

On January 16, 1991, Ford Motor Credit filed a motion in bankruptcy court to limit the use of cash collateral, including the surplus proceeds in the Eagle Bank account. By Agreed Order filed January 18, 1991, One Moore Ford and Ford Motor Credit agreed, and the bankruptcy court ordered, that the cash collateral would be handled in the manner approved by the parties in December 1990 before the petition in bankruptcy. Pertinent parts of that Agreed Order read:

> The debtor and Ford Motor Credit Company have agreed that Ford Credit is entitled to continue to have its cash collateral handled in the manner that had been jointly approved by the parties prior to filing the petition for debtor relief. The following procedure shall continue until changed by court order.
>
> 1. Ford Motor Credit Company's cash collateral, consists [of] contracts purchased by it from the debtor, generated by sale of wholesale inventory of automobiles.
>
> 2. Ford Credit shall be permitted to keep a representative on the debtor's premises to assure that Ford Credit receives the portion of proceeds of any sale to which it is

entitled, the amount necessary to discharge the secured debt on each individual unit;

Also, on January 18, 1991, the bankruptcy court granted One Moore Ford's motion to allow use of cash collateral for payment of payroll, payroll taxes, and purchase of parts. In its order, the bankruptcy court approved One Moore Ford's using TCB's cash collateral for payroll and payroll taxes ($25,000) and for the purchase of parts ($25,000). The bankruptcy court further authorized One Moore Ford to use $23,000 of the cash collateral of Ford Motor Credit held on deposit at Eagle Bank:

> The Debtor is further authorized to use cash collateral of Ford Motor Credit Company subject to the terms and provisions of an Agreed Order by and between the Debtor and Ford Motor Credit Company submitted contemporaneous herewith. Such cash collateral that the Debtor may use shall be defined as the Debtor's portion of the sale proceeds derived from purchase of contracts by Ford Motor Credit Company from Debtor. For purposes of this Order, Debtor shall use $23,000.00 of funds currently held on deposit at Eagle Bank.

One Moore Ford next entered into an agreement for post-petition financing with TCB, and the bankruptcy court conditionally approved the agreement on January 25, 1991. The court found that One Moore Ford could incur secured debt in an amount not to exceed the lesser of cash generated from operations or $1,691,000. Pertinent parts of that approved financing agreement read:

> 6.2 *Costs and Expenses to be Funded; Monthly Budget.* (a) TCB shall advance funds to the Debtor to pay the reasonable and necessary costs and expenses incurred by it in connection with the preservation and disposition of accounts receivable, all inventory, . . . equipment and other property of the Debtor in which TCB has a valid, perfected and enforceable security interest.

> . . . .

> 9.1 *Liens; Security Interests.* . . . The security interest of TCB shall be superior to the claims of all other creditors except for the pre-petition perfected claims of Ford

Motor Credit Corp. with respect to MOORE FORD's vehicle inventory and proceeds and except for any pre-petition perfected interests in Borrower's real property.

From January 25, 1991, until February 21, 1991, One Moore Ford, at the direction of TCB, transferred $185,000 of the cash collateral held in the Eagle Bank debtor-in-possession account, which were surplus proceeds from its vehicle sales, to its debtor-in-possession account at TCB. TCB did not notify Ford Motor Credit or obtain its permission for these transfers. Also, on February 21, 1991, One Moore Ford made a direct deposit of $8,000 into the TCB account: $7,000 was a cashier's check and $1,000 was cash. There appears to be no dispute that the funds transferred from Eagle Bank to TCB were subsequently used to pay One Moore Ford's operating expenses. One Moore Ford eventually converted its Chapter 11 bankruptcy to a Chapter 7 liquidation. According to the proof presented in this matter, TCB is left with an unpaid debt of $750,000, and Ford Motor Credit is owed $1,841,032.

On September 18, 1991, Ford Motor Credit filed a complaint against TCB in Pulaski County Circuit Court and alleged conversion of its cash collateral held on deposit at Eagle Bank. Later, on April 2, 1993, Ford Motor Credit amended its complaint to allege that TCB converted its cash collateral when it demanded that One Moore Ford transfer the cash collateral in the Eagle Bank account to the TCB account. On February 18, 1994, Ford Motor Credit filed a third amendment to its complaint, alleging the total amount of the conversion to be $193,000.

On December 22, 1993, TCB moved for summary judgment on grounds that One Moore Ford had used the cash collateral at issue solely for operating expenses and that Ford Motor Credit had consented to the use of those funds for that purpose. On February 22, 1994, Ford Motor Credit filed its own motion for summary judgment and asserted that it was entitled to judgment for conversion against TCB as a matter of law. The circuit court conducted a hearing on the two motions on February 28, 1994, and following the hearing granted summary judgment to TCB. In doing so, the court found that Ford Motor Credit had consented to One Moore Ford's use of the Eagle Bank cash collateral for operating expenses under the Agreed Order and that Ford Motor

Credit had sustained no damages to support an action for conversion because TCB had used the funds in dispute for the operating expenses of One Moore Ford which benefited both secured creditors.

Ford Motor Credit mounts three arguments for reversal: (1) TCB was not entitled to summary judgment as a matter of law because of its conversion of Ford Motor Credit's cash collateral; (2) the circuit court abused its discretion in denying summary judgment to Ford Motor Credit; and (3) an issue of material fact remains to be decided on whether Ford Motor Credit consented to use of its cash collateral for One Moore Ford's operating expenses. We agree that an issue of material fact does remain over whether Ford Motor Credit consented to TCB's use of these funds.

██ Our oft-stated standard for review of a summary judgment is whether the evidentiary items presented by the moving party in support of the motion left a question of material fact unanswered and, if not, whether the moving party is entitled to summary judgment as a matter of law. *Oglesby* v. *Baptist Medical System*, 319 Ark. 280, 891 S.W.2d 48 (1995); *Forrest City Machine Works* v. *Mosbacher*, 312 Ark. 578, 851 S.W.2d 443 (1993). The burden of sustaining the motion is on the moving party. *Id.* All proof must be viewed in the light most favorable to the party resisting the motion, and all doubts and inferences must be resolved against the moving party. *Id.* However, when the movant makes a *prima facie* showing of entitlement, the respondent must meet proof with proof by showing genuine issue as to a material fact. *Brunt* v. *Food 4 Less, Inc.*, 318 Ark. 427, 885 S.W.2d 894 (1994); *Wyatt* v. *St. Paul Fire & Marine Insurance Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994).

TCB vigorously contends in support of affirming its order for summary judgment that Ford Motor Credit consented to the use of the Eagle Bank cash collateral post-petition for payment of One Moore Ford's operating expenses and that those proceeds were indeed used for that purpose only. It points to the Agreed Order where One Moore Ford and Ford Motor Credit agreed that the credit company was "entitled to continue to have its cash collateral handled in the manner that had been jointly approved by the parties prior to filing the petition for debtor relief." Further-

more, the Agreed Order provided that Ford Motor Credit could keep a representative on the debtor's premises to ensure that it received "the portion of proceeds of any sale to which it is entitled, the amount necessary to discharge the secured debt on each individual unit." According to TCB, that order conclusively evidences Ford Motor Credit's consent.

Ford Motor Credit urges on the other hand that it never consented to blanket use of the Eagle Bank cash collateral for operating expenses post-petition and premises its countervailing argument on several factors. It argues that the Agreed Order may refer to a pre-petition procedure for depositing funds in the Eagle Bank account, but nowhere does it authorize use of that cash collateral for One Moore Ford's operating expenses. Ford Motor Credit also points to the Bankruptcy Code which requires either consent by all interested entities or court authorization before cash collateral can be used. 11 U.S.C. § 363(c)(2) (1988). Ford Motor Credit further underscores the fact that the second order of January 18, 1991, authorized using only a fixed amount of the Eagle Bank funds for operating expenses — $23,000. That order does not state or otherwise indicate that it would be blanket or continued authority for use of this cash collateral beyond the specified amount. Ford Motor Credit contends that it consented to One Moore Ford's use of the $23,000 on that one occasion because One Moore Ford had not yet secured post-petition financing with TCB. According to Ford Motor Credit, once One Moore Ford secured financing from TCB on January 25, 1991, the obligation to pay operating expenses became TCB's and the Eagle Bank cash collateral could not be invaded. Indeed, Ford Motor Credit refers to the precise language in the January 25, 1991 Financing Order that its perfected claims in vehicle inventory and proceeds would be superior.

We agree that when read together the two January 18 orders are unclear and inconclusive on whether Ford Motor Credit consented to use of the Eagle Bank cash collateral for operating expenses post-petition. Indeed, the circuit court recognized an ambiguity in the orders, though the parties did not, when it stated:

> The problem I have, though, is that there's an ambiguity with the agreed order and the order allowing use of collateral for payment. We have two affidavits from two gen-

tlemen who had an agreement with One Moore Ford to apparently use the funds as operating expenses. There's nothing that I can see that's been filed that said that there was an agreement after January the 18th. And the January . . . 18th order is ambiguous in that it states that they are entitled to continue to have its cash collateral handled in the same manner that had been jointly approved by the parties prior to filing the petition. . . . I don't know if there's a factual issue, though, that we need to decide, and that is what this agreed upon order means. It is not clear. If it in fact means that they continued to use the funds for operating expenses, then I would grant the motion for summary judgment.

It is difficult for this court to conclude that a question of material fact surrounding Ford Motor Credit's consent to its cash collateral does not exist when the circuit court alludes to the lack of clarity and an ambiguity in the two controlling bankruptcy court orders. When an ambiguity exists in contract language, for example, clearly it becomes a matter for resolution by the trier of fact. *See, e.g., Keller* v. *Safeco Ins. Co.*, 317 Ark. 308, 877 S.W.2d 90 (1994); *McNair* v. *McNair*, 316 Ark. 299, 870 S.W.2d 756 (1994).

Moreover, a bankruptcy petition changes the relationship of all affected entities, and here there is conflicting proof on the use of the Eagle Bank funds post-petition. TCB presents the affidavits and depositions of Ford Motor Credit branch managers Claude Hill and Stan Lockhart, One Moore Ford attorney Geoffrey Treece, and then TCB Executive Vice President Robert Birch in support of its case that Ford Motor Credit consented to the use of its cash collateral for One Moore Ford's operating expenses. Ford Motor Credit counters this proof with the affidavits and depositions of Lockhart, Birch, and One Moore Ford Chief Accountant Terry Mercing that it never consented to the transfer of the Eagle Bank cash collateral to TCB. Lockhart in particular testified to this by affidavit, and Birch admitted that he saw no reason to seek Ford Motor Credit's permission to transfer the Eagle Bank cash collateral. Thus, not only were the two orders of January 18, 1991, unclear and conflicting on the issue of consent, but the affidavits and depositions submitted by the parties conflict on the extent that Ford Motor Credit knew that TCB

was using the Eagle Bank cash collateral post-petition. Ordinarily, cross motions for summary judgment might eliminate all factual issues. But TCB and Ford Motor Credit are diametrically opposed on the factual issue of consent.

We, accordingly, hold that whether Ford Motor Credit consented to a general use of its cash collateral at Eagle Bank for One Moore Ford's operating expenses after the bankruptcy petition was filed is an issue of material fact that remains to be determined. Nor do we believe that the issue can be resolved simply as a matter of law by reference to the bankruptcy orders for reasons already discussed. Manifestly, if Ford Motor Credit did not consent to the use of its cash collateral and it was wrongfully spent, damage to the credit company would be the result. Nevertheless, we do not reach the issue of whether a conversion in fact transpired in this opinion.

We reverse the order of summary judgment and remand for a trial on the merits. With regard to the remand, we turn to the request of Ford Motor Credit that a different circuit judge try the case due to the fact that the current circuit judge has made a decision on the consent and damage issues. Ford Motor Credit contends that this would militate against an impartial tribunal. We do not agree that this impairs the ability of Ford Motor Credit to obtain a fair trial. We have previously held that when a trial judge granted a directed verdict and we reversed and remanded for trial and the matter was in fact tried, there was no valid reason for the judge to disqualify. *Carton* v. *Missouri Pacific Railroad*, 315 Ark. 5, 865 S.W.2d 635 (1993). We noted in *Carton* that a judge has a duty to remain in a case unless there is some valid reason to disqualify. Moreover, the decision to disqualify rests within the trial court's discretion. *Trimble* v. *State*, 316 Ark. 161, 871 S.W.2d 562 (1994); *Pinkston* v. *Lovell*, 296 Ark. 543, 759 S.W.2d 20 (1988). Reversals of summary judgment orders and directed verdicts and remands for new trials occur from time to time. Were we to require a new judge to be substituted in each instance, that would necessitate multiple appointments and exchange agreements that may not in fact be necessary. We decline to do so in this instance.

Reversed and remanded.