Janet RENFRO, Individually and as Mother and Next Friend of Brandee L. Hodges, a Minor *v.* Jerry Eugene ADKINS and Juanita C. Adkins, Individually and as Executrix of the Estate of Frederick Earl Adkins, Jr., Deceased; Frederick Earl Adkins; and Rebecca E. Adkins

95-500                                                914 S.W.2d 306

Supreme Court of Arkansas
Opinion delivered February 5, 1996

*Boswell, Tucker & Brewster*, by: *Ted Boswell* and *John T. Holleman*, for appellant.

*Warford, Revels & McCallister*, by: *Bobby D. McCallister*, for appellee Juanita C. Adkins.

*Huckabay, Munson, Rowlett & Tilley, P.A.*, for appellee Frederick Earl Adkins.

*Matthews, Sanders, & Sayes*, by: *Margaret M. Newton* and *Roy Gene Sanders*, for appellee Rebecca E. Adkins.

ROBERT L. BROWN, Justice. The appellants, Janet Renfro and Brandee L. Hodges, appeal an order granting summary judgment in favor of the appellees, Frederick Earl Adkins, III, Rebecca Adkins, and Juanita Adkins, individually and as executrix of the estate of Frederick Earl Adkins, Jr. They contend that summary judgment was inappropriate because genuine issues of material fact remain to be decided. They further urge that the trial court erred in finding that it did not have personal jurisdiction over Juanita Adkins.

On November 12, 1992, Jerry Adkins was driving a pickup truck that was titled to his deceased father, Frederick Adkins, Jr., when he collided with a car in which Brandee L. Hodges

was a passenger. Hodges was seriously injured as a result of the accident. It was later determined that Jerry Adkins was intoxicated at the time of the accident.

Janet Renfro (both individually and on behalf of her daughter, Brandee Hodges) filed a negligence claim against Jerry Adkins. Renfro later amended her complaint to include a negligent entrustment action against Juanita Adkins, who was Jerry Adkins's stepmother, and sued her in her individual capacity and as executrix of the estate of Frederick Adkins, Jr. Juanita Adkins was sued as an individual because the will of Frederick Adkins, Jr. left the pickup truck to her. Renfro alleged that Juanita Adkins, as a resident of Louisiana, entrusted the pickup truck to Jerry Adkins in Louisiana with knowledge of his past history of reckless operation of automobiles and with knowledge that the vehicle would be driven in Arkansas without liability insurance.

Juanita Adkins answered and moved to dismiss Renfro's complaint on grounds that the Arkansas trial court lacked personal jurisdiction over her because she resided in Louisiana. She later moved for summary judgment on the negligent entrustment claim and contended that ownership in the vehicle had never vested in her and that ownership of the vehicle had been transferred to Jerry Adkins prior to the accident. She further asserted that there was no evidence that she knew or had reason to know of Jerry Adkins's driving record.

On July 22, 1992, Renfro filed a second amended complaint. In this complaint, she added allegations of negligent entrustment, tort of outrage, and fraudulent conveyance against Frederick Adkins, III, and Rebecca Adkins, brother and sister of Jerry Adkins. The new allegations were based on a "jailhouse" letter[1] written by Jerry Adkins to his wife, Phyllis. The letter stated that he had "stashed" money with Frederick and Rebecca Adkins.

Frederick and Rebecca Adkins answered the amended complaint and later moved for summary judgment, claiming that the

---

[1] As a result of the accident, Jerry Adkins's probation for a previous battery conviction was revoked, and he was imprisoned.

complaint failed to state a cause of action for any of the claims alleged. Attached to their motions were their affidavits and an affidavit by Jerry Adkins. Jerry Adkins's affidavit stated that the reference that he had "stashed" moneys referred to the disclaimer he had made to his grandmother's inheritance in the probate of her estate prior to the accident. The money disclaimed went to Frederick and Rebecca Adkins under their grandmother's will. He further averred that they were the legal owners of the money and that there were no other funds to be transferred. He added that he took possession and ownership of the pickup truck when he went to Louisiana and that neither Frederick nor Rebecca Adkins ever had an interest in it. His brother's and sister's affidavits confirmed the sworn statements in Jerry Adkins's affidavit.

On February 9, 1995, the trial court granted Juanita Adkins's motion for summary judgment on the negligent entrustment claims. The trial court also granted summary judgment on all the claims asserted against Frederick and Rebecca Adkins. Finally, the trial court granted Juanita Adkins's motion to dismiss on the grounds of lack of personal jurisdiction. Also on February 9, 1995, Renfro moved to voluntarily dismiss her claims against Jerry Adkins, the remaining party to the lawsuit. The trial court granted the motion and dismissed the action against Jerry Adkins without prejudice.

Although no issue concerning the finality of the order has been raised by the parties, our recent decision in *Driggers* v. *Locke*, 323 Ark. 63, 913 S.W.2d 269 (1996), deserves mention. In *Driggers*, we distinguished *Haile* v. *Arkansas Power & Light Co.*, 322 Ark. 29, 907 S.W.2d 122 (1995), where we held that a voluntary nonsuit of a *claim* by a party prevented an order which decided the remaining claims of that party from being final for purposes of an appeal. In *Driggers*, we held that the taking of a voluntary nonsuit with respect to an opposing *party*, as opposed to a *claim*, did not adversely affect the finality of an order regarding the remaining parties. As Renfro's nonsuit in the instant case involved a party rather than a claim, the orders appealed from are final and appealable, and we will address the merits of this appeal.

*I. Personal Jurisdiction*

Renfro takes issue with the trial court's finding that it did not have personal jurisdiction over Juanita Adkins, who resides in Louisiana, and we address this matter of jurisdiction first. Renfro claims that the trial court had personal jurisdiction over Adkins pursuant to the long-arm statute, Ark. Code Ann. § 16-4-101 (1987)[2] and pursuant to the Nonresident Motorist Act, Ark. Code Ann. § 16-58-121 (1987). Apparently, service was first had on Juanita Adkins under the long-arm statute. She was later served under the Nonresident Motorist Act. We agree that personal jurisdiction was appropriately obtained against Juanita Adkins under the Nonresident Motorist Act. Thus, we hold that the trial court did have personal jurisdiction over Juanita Adkins, both individually and as executrix of the estate of Frederick Adkins, Jr.

■ The Nonresident Motorist Act permits service of process on a nonresident owner of a vehicle by designating the Secretary of State as the nonresident owner's agent for service of process in exchange for the privilege of operating a vehicle owned by the nonresident on Arkansas highways. Since the nonresident owner's "agent" can be personally served within the state under the Act, the trial court was able to obtain *in personam* jurisdiction over Juanita Adkins by service on the Arkansas Secretary of State. *See Shaffer* v. *Heitner*, 433 U.S. 186, 202 (1977) (*citing Hess* v. *Pawloski*, 274 U.S. 352 (1927)).

■ At oral argument, counsel for Renfro asserted that service was perfected on the Secretary of State pursuant to the Nonresident Motorist Act, and the record confirms that counsel for Renfro similarly confirmed that fact before the trial court. We note that the record does not contain a return of service as proof that service was accomplished under the Act. However, perfection of service under the Nonresident Motorist Act was never contested by Juanita Adkins. What she does contend is that she was not the owner of the pickup truck at the time of the accident and, thus, the Act does not apply. In a statement signed by her

---

[2] This long-arm statute was amended by Act 486 of 1995 to eliminate the basis for jurisdiction argued in this case but was in effect at the time of the accident at issue. Act 486 did not affect Ark. Code Ann. § 16-58-120 (1987).

on August 2, 1992, which was before the accident, she refers to the pickup truck which she turned over to Jerry Adkins as "my Ford Truck." In addition, she concedes in her brief on appeal that an inference could be made that title was in her name, as executrix of the estate, at the time of the accident. In fact, the certificate of title reflects that on November 24, 1992 — 12 days after the accident — she transferred title from her deceased husband's estate to herself. We are of the opinion that service on Juanita Adkins was proper under the Nonresident Motorist Act, and we reverse the trial court on this point.

## II. Summary Judgment

Renfro next claims that the trial court erred in granting summary judgment in favor of each appellee on the issues of negligent entrustment, fraudulent conveyance, and tort of outrage.

■ This court has summarized its standards for summary judgment review recently:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Nixon* v. *H & C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes* v. *Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Lovell* v. *St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992); *Harvison* v. *Charles E. Davis & Assoc.*, 310 Ark. 104, 835 S.W.2d 284 (1992); *Reagan* v. *City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991). Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. Ark. R. Civ. P. 56(c); *Short* v. *Little Rock Dodge, Inc.*, 297 Ark. 104, 759 S.W.2d 553 (1988); see also *Celotex Corp.*

v. *Catrett*, 477 U.S. 317 (1986).

*Cash* v. *Lim*, 322 Ark. 359, 360-362, 908 S.W.2d 655, 656-657 (1995); *Oglesby* v. *Baptist Medical Sys.*, 319 Ark. 280, 284, 891 S.W.2d 48, 50 (1995).

■ It is further well-settled that once the moving party establishes a *prima facie* entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See Ford Motor Credit Co.* v. *Twin City Bank*, 320 Ark. 231, 895 S.W.2d 545 (1995); *Wyatt* v. *St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994). With these standards in mind, we turn to the precise claims upon which summary judgment was rendered.

a. Negligent Entrustment

■ Renfro contends that the trial court erred in granting summary judgment on the negligent entrustment claims. We have held that proof regarding the following elements is necessary to establish a case of negligent entrustment:

> (1) the entrustee was incompetent, inexperienced or reckless;

> (2) the entrustor knew or had reason to know of the entrustee's condition or proclivities;

> (3) there was an entrustment of the chattel;

> (4) the entrustment created an appreciable risk of harm to the plaintiff and a relational duty on the part of the defendant; and

> (5) the harm to the plaintiff was proximately or legally caused by the negligence of the defendant.

*Arkansas Bank & Trust Co.* v. *Erwin*, 300 Ark. 599, 781 S.W.2d 21 (1989).

We first examine the negligent entrustment claim as asserted against Juanita Adkins. Viewing the evidence in the light most favorable to her, there appear to be several genuine issues of material fact. Initially, there is an issue as to who actually owned the pickup truck in question. At the time of the acci-

dent, the title was still in the name of Jerry Adkins's deceased father, and Juanita Adkins was the executrix of his estate. The will, however, left the truck to Juanita Adkins. While she maintains that she gave the truck to Jerry Adkins and that title could not be transferred while the estate was still in probate, the title and the will were evidence that the truck was, in fact, still held by the estate and, thus, by Juanita Adkins as executrix at the time of the accident. As previously mentioned, on August 2, 1992, Juanita Adkins signed a document stating that Jerry and Phyllis Adkins have "my permission to use my Ford Truck," thereby admitting her ownership. Twelve days after the accident she transferred title to the vehicle from the estate to herself. At the very least, a material question of fact remains to be resolved concerning this matter.

Further, a genuine issue of material fact exists on whether Juanita Adkins had any knowledge of Jerry Adkins's propensity to drive while intoxicated. In her deposition, Juanita Adkins stated that she knew Jerry had been drinking at his father's funeral, which, of course, occurred before she turned the pickup truck over to him. Also, Phyllis Adkins's affidavit stated that the entire family, including Juanita Adkins, knew of Jerry Adkins's history of driving while intoxicated. Juanita Adkins contested this in her own affidavit and stated that she did not know that Jerry Adkins had a history of driving while intoxicated, and her affidavit was corroborated by the affidavits of Frederick Adkins and Rebecca Adkins. But the conflicting affidavits present a patent issue of material fact.

Juanita Adkins cites *McDonalds* v. *Eubanks*, 292 Ark. 533, 731 S.W.2d 769 (1987), and urges that this court should not consider the affidavit of Phyllis Adkins because it was merely conclusory. That affidavit read:

> I, Phyllis Adkins, do state under oath, that Juanita Adkins, stepmother of Jerry Eugene Adkins, knew that Jerry Eugene Adkins frequently drove while intoxicated. She also knew that Jerry Eugene Adkins had a large number of traffic tickets, and was an incompetent and reckless driver.

> Moreover, his entire family, including his brother and sister, knew of his terrible driving record.

■ The *Eubanks* case is distinguishable, however. In that case, the affidavits dealt with an expert's opinion on the ultimate issue of whether the appellee was negligent, and they failed to include facts in support of the expert's conclusions. In this case, a lay opinion was offered by Phyllis Adkins regarding her knowledge about what Juanita Adkins knew. Hence, the Adkins affidavit did not require the factual support that the expert opinion in *Eubanks* did. Finally, the Adkins affidavit is not construed against Renfro as it is not an affidavit in support of a motion for summary judgment; rather, the affidavit must be taken in the light most favorable to her. *Hughes Western World* v. *Westmoor Mfg. Co.*, 269 Ark. 300, 601 S.W.2d 826 (1980). Thus, a genuine issue of material fact existed, and the trial court erred in granting summary judgment in favor of Juanita Adkins on the negligent entrustment count.

We next address whether the trial court erred in granting summary judgment in favor of Frederick and Rebecca Adkins on the claim of negligent entrustment. Renfro asserts that Frederick and Rebecca Adkins embarked on a course of conduct that permitted Jerry Adkins to secure possession of the vehicle from his stepmother and that they approved his taking possession of the truck from Juanita Adkins and from the estate. We hold the trial court did not err in this regard.

■ While it is true, as Renfro asserts, that an entrustment need not be made by the owner and can be made through a third person such as an employee or an agent, there is no proof to suggest that either Frederick or Rebecca Adkins was acting as an agent of the estate or of Juanita Adkins. Frederick Adkins gave Jerry Adkins a ride to Louisiana on his way to Florida. He also provided his stepmother with a form so that she could protect herself and the estate from any liability that might arise from Jerry Adkins's driving of the vehicle. Those actions do not support a negligent entrustment claim against him. Rebecca Adkins did even less. We conclude that there is no evidence that either party "supplied" the truck to Jerry, directly or indirectly, or even exercised any control over it. *See Arkansas Bank & Trust, Co.* v. *Erwin, supra.* We affirm the trial court with regard to the claims against Frederick and Rebecca Adkins.

b. Outrage

The next point raised concerns the outrage claim brought against Frederick and Rebecca Adkins but resolved against Renfro on summary judgment.[3] Renfro claims that Frederick Adkins's conduct (1) in transporting Jerry Adkins to Louisiana to pick up the truck, (2) in providing the release form to Juanita Adkins, and (3) his knowledge of Jerry Adkins's propensity to drive while intoxicated, combined with his effort to fraudulently receive funds from Jerry Adkins, amounted to the tort of outrage.

This court has taken a very narrow view of claims of outrage. *See, e.g., Croom v. Younts*, 323 Ark. 95, 913 S.W.2d 283 (1996); *Ross v. Patterson*, 307 Ark. 68, 817 S.W.2d 418 (1991); *Harris v. Arkansas Book Co.*, 287 Ark. 353, 700 S.W.2d 41 (1985) (citing *Givens v. Hixson*, 275 Ark. 370, 631 S.W.2d 263 (1982)). In *Sterling Drug, Inc. v. Oxford*, 294 Ark. 239, 743 S.W.2d 380 (1988) (citing *M.B.M. Co., Inc. v. Counce*, 268 Ark. 269, 596 S.W.2d 681 (1980)), for example, this court stated that one is subject to liability for outrage if he or she willfully or wantonly causes severe emotional distress to another by extreme and outrageous conduct — conduct that is so outrageous in character and so extreme in degree as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in civilized society. The emotional distress for which damages may be sought must be so severe that no reasonable person could be expected to endure it. *Tandy Corp. v. Bone*, 283 Ark. 399, 678 S.W.2d 312 (1984). In addition, the tort of outrage requires clear-cut proof. *Croom v. Younts, supra.* Merely describing the conduct as outrageous does not make it so. *Ross v. Patterson, supra; Givens v. Hixson, supra.*

In the case at hand, the trial court correctly granted the motion for summary judgment on the outrage claim. As already discussed, the negligent entrustment claim against Fred-

---

[3] Renfro in her briefs concentrates on the conduct of Frederick Adkins. She does not argue that the trial court erred in finding that Rebecca Adkins's conduct did not rise to the level of outrage. We further note that Juanita Adkins answered the outrage claim, though Renfro did not assert that Juanita Adkins committed the tort of outrage in her complaint.

erick Adkins was correctly dismissed. The remaining allegations fall woefully short of supporting a claim of outrage.

c. Fraudulent Transfer

■ The final point that must be addressed is whether the trial court erred in granting summary judgment in favor of Frederick and Rebecca Adkins on the issue of fraudulent transfer. We need not address this issue because Renfro has voluntarily dismissed Jerry Adkins from the lawsuit. Without a claim that Jerry Adkins made the fraudulent transfer, that is, had some ownership interest in the assets and made the transfer with intent to defraud, we discern no basis for a claim against his brother and sister.

Affirmed in part. Reversed in part and remanded.

GLAZE and CORBIN, JJ., dissent.

TOM GLAZE, Justice, dissenting. This appeal should be dismissed for the same reasons I expressed in my dissent in *Driggers v. Locke*, 323 Ark. 63, 913 S.W.2d 269 (1996). Eventually, this court will need to overrule *Driggers* or amend Rule 54(b) so the rule will reflect the holding in *Driggers*. As matters stand now, the *Driggers* decision and Rule 54(b) are at odds.

Rule 54(b) is quite simple and will work if its provisions are followed. The rule provides that an interlocutory appeal may be had from the dismissal of one party or one claim in a multiparty, multi-claim lawsuit when the trial court enters the dismissal of the party or claim as a final judgment, and makes express findings that there is no just reason to delay the appeal. Here, for whatever reasons, the appellant simply circumvented Rule 54(b)'s dictates and did not ask the trial court for an interlocutory appeal. Because she failed to comply with Rule 54(b)'s express language, her appeal should be dismissed. Instead, this court awards appellant an interlocutory appeal. I just "don't get it."