Janet CALANDRO and Dale Suezaki *v.* John W. PARKERSON

95-825                                            936 S.W.2d 755

Supreme Court of Arkansas
Opinion delivered February 3, 1997

[Petitions for rehearing denied March 10, 1997.]

*T.B. Patterson, Jr. P.A.*, for appellants.

*Stephen M. Bingham*, for appellee.

W.H. "Dub" Arnold, Chief Justice. The appellants, Janet Calandro and Dale Suezaki, were the sole shareholders in U and Me, Inc., a Hot Springs convenience store. As individuals, appellants filed suit for legal malpractice, deceit, and breach of contract against appellee John W. Parkerson. The trial court granted summary judgment in appellee's favor on the basis that the causes of action alleged were those of the corporation, not the individual appellants. We affirm summary judgment as to the claims for malpractice and breach of contract, but reverse and remand the trial court's ruling on appellants' claim for deceit.

On April 29, 1994, appellants filed their complaint against appellee, an attorney practicing in Hot Springs. They alleged that, in the spring of 1991, they had desired to open a convenience store, had located a site for the business, and had found a prospective landlord, Kwik Lane Management Company, which had agreed to rent the property and necessary equipment to them. Appellants obtained a proposed lease agreement from Jim Davis, a representative of the purported lessor, and took it to appellee.

Upon appellee's recommendation, appellants incorporated as U and Me, Inc. Thereafter, appellee redrafted the lease agreement, which was executed on May 1, 1991, by Kwik Lane Management Corporation as lessor and U and Me, Inc., as lessee. The business had been in operation for approximately five months when, in September of 1991, appellants were advised that Kwik Lane was not the owner of the business premises; rather, Southern Farm Bureau Life Insurance Company owned the real property and Worthen Bank owned the equipment. It was appellants' position that appellee's failure to inquire as to the status of the lessor and the title of the property leased constituted professional negligence, which proximately caused them to lose possession and use of the premises and equipment.

According to appellants' complaint, in October of 1991, appellee agreed to assist them in obtaining leases for the real property and the equipment and promised that he would "get back to them." On or about January 2, 1992, appellee, knowing that appellants would rely on his statement, told appellant Calandro that the real property had been sold, when, in fact, appellee knew that the property had not been sold. Relying on appellee's statement, appellants vacated the premises and allowed Worthen to take the equipment. Appellants claimed that, as a result of appellee's deceit as to the sale of the business premises, they voluntarily surrendered their rights in the equipment and fixtures necessary to operate their store, which closed in January of 1992. Two years later, on January 24, 1994, U and Me's corporate charter was revoked for nonpayment of franchise taxes. Appellants asserted that appellee's negligence and malfeasance constituted a breach of the attorney-client agreement, entitling them to a return of attorney's fees and costs.

After the complaint was filed, discovery ensued with the taking of both appellants' depositions. Appellee moved for summary judgment on the basis that the causes of actions alleged in appellants' complaint were those of the corporation, not the individual appellants. Attached to the motion were copies of checks written on the corporation's account to appellee covering fees and costs, as well as portions of appellants' depositions. While appellants filed a written response to the motion, they submitted no supporting affidavits, nor did they or their attorney appear at the scheduled hearing.

On April 12, 1995, the trial court issued a letter opinion and found: (1) that it was clear from the pleadings that the services upon which the complaint was based were rendered to the corporation, U and Me, Inc., and that appellants Calandro and Suezaki were not the proper parties in the case and had not moved to substitute the proper party; (2) that U and Me, Inc. lost its capacity to sue when its charter was revoked for failure to pay franchise fees; (3) that the acts complained of were now barred by the statute of limitations; (4) that the complaint failed to state a cause of action; and (5) that there was no genuine issue of material fact

remaining to be tried in the case. On April 17, 1995, the trial court granted summary judgment to appellee.

■ We have recently summarized our standards for summary judgment review as follows:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Nixon v. H & C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes v. Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Lovell v. St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992); *Harvison v. Charles E. Davis & Assoc.*, 310 Ark. 104, 835 S.W.2d 284 (1992); *Reagan v. City of Piggott*, 305 Ark. 77, 805 S.W.2d 636 (1991). Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. Ark. R. Civ. P. 56(c); *Short v. Little Rock Dodge, Inc.*, 297 Ark. 104, 759 S.W.2d 553 (1988); *see also Celotex Corp. v. Catrett*, 477 U.S. 317 (1986).

*Renfro v. Adkins*, 323 Ark. 288, 295-296, 914 S.W.2d 306, 309-310 (1996); *Cash v. Lim*, 322 Ark. 359, 360-362, 908 S.W.2d 655, 656-657 (1995); *Oglesby v. Baptist Medical Sys.*, 319 Ark. 280, 284, 891 S.W.2d 48, 50 (1995).

■ Once the moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *Renfro v. Adkins, supra*; *Ford Motor Credit Co. v. Twin City Bank*, 320 Ark. 231, 895 S.W.2d 545 (1995); *Wyatt v. St. Paul Fire & Marine Ins. Co.*, 315 Ark. 547, 868 S.W.2d 505 (1994). If a moving party supports its motion for summary judgment by making a prima facie showing of an absence of factual issues and entitlement to judgment as a matter of law, and the adverse party fails to set forth specific facts showing a genuine issue of material fact, then

we will not say the trial judge erred in granting summary judgment. *Pyle v. Roberson*, 313 Ark. 692, 858 S.W.2d 662 (1993).

██ Appellee asks that we affirm summary judgment on the basis that the causes of action alleged in appellants' complaint are those of the corporation, and, since the corporation lost its capacity to sue when it lost its charter, appellants cannot, as individuals, do for the corporation what it could not do for itself. As supporting authority for his position, appellee cites *Schmidt v. McIlroy Bank & Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991). In *Schmidt*, appellants Schmidt were the sole shareholders of Acro Corporation, a family farming and egg-producing business. Acro held its checking accounts and borrowed money from appellee McIlroy Bank. Appellants Schmidt and Acro filed a lender-liability suit against McIlroy Bank, but did not plead any individual cause of action as guarantors of Acro's debts. The trial court granted the bank's motion for summary judgment as to Acro on the ground that Acro's charter had been revoked for failure to pay franchise fees, and later granted summary judgment as to the Schmidts on the grounds that they had not amended their complaint to allege individual guarantor status. On appeal, we affirmed, explaining:

> The reasoning behind the cases holding officers and stockholders liable is that they ought not be allowed to avoid personal liability because of their nonfeasance. On the other hand, it does not follow that they should be allowed to benefit by their nonfeasance by allowing them to bring suit as partners. The effect of revocation was that the corporation lost its capacity to sue, *Sulphur Springs Recreational Park v. City of Camden*, 247 Ark. 713, 447 S.W.2d 844 (1969), and this particular type of corporate cause of action ceased to exist. To allow the individual appellants to bring this cause of action would effectively reverse prior law which prohibits suits by a corporation whose charter has been revoked and, in addition, would reward them for their nonfeasance.

306 Ark. at 33. We agree with appellee that our holding in *Schmidt* controls the malpractice and breach of contract claims in this case. It is axiomatic that a corporation is an entity separate from its stockholders. *Wiseman v. State Bank & Trust, N.A.*, 313 Ark. 289, 854 S.W.2d 725 (1993). A corporation, once formed, owns the corporate property and owes the corporate debts, is the

creditor to sue or debtor to be sued, has perpetual existence, and can act only through its duly constituted organs, primarily its board of directors. *Arkansas Iron & Metal v. First National Bank of Rogers*, 16 Ark. App. 245, 701 S.W.2d 380 (1995), *citing* H. Henn, *Laws of Corporations and Other Business Enterprises* § 78 (3d ed. 1983).

It is undisputed that appellants came to appellee to form a business and that appellee assisted in incorporating the business. However, appellants do not complain that appellee was negligent in forming the corporation; rather, they contend that appellee failed to conduct a title search of the real property listed in the lease agreement and to verify the purported lessor's status. The lease agreement, a copy of which is attached to appellants' complaint, demonstrates that the lease was entered into by the corporation, not the individual appellants. Significantly, appellee's motion for summary judgment was supported by two checks demonstrating that the corporation paid his fees and costs. In their response to the motion, appellants asserted that forming the corporation was "just one of the services" appellee provided to them. However, they did not delineate any specific services that appellee had provided them as individuals. During oral argument, appellants conceded that they did not offer any evidence to meet the proof offered by appellee. Thus, they failed to meet proof with proof to show that an issue of fact remained as to whether the services were rendered to the corporation, or to them as individuals.

Turning to appellants' claim for deceit, this tort, also known as fraud or misrepresentation, consists of five elements that must be proved by a preponderance of the evidence: (1) a false representation, usually of a material fact; (2) knowledge or belief by the defendant that the representation is false; (3) intent to induce reliance on the part of the plaintiff; (4) justifiable reliance by the plaintiff; and (5) resulting damage to the plaintiff. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996); *Wiseman v. Batchelor*, 315 Ark. 85, 864 S.W.2d 248 (1993).

Appellee defends the trial court's granting of summary judgment on the basis that appellants had no standing to assert any

of the causes of action set forth in their complaint. While this argument is persuasive as to appellants' malpractice and contract claims, it cannot defeat appellants' separate claim for deceit. This is so because, in Arkansas, privity of contract is not required in order to have a cause of action against an attorney for intentional misrepresentations or fraud. *Clark v. Ridgeway, supra; Wiseman v. Batchelor, supra;* Ark. Code Ann. § 16-22-310(a)(1) (Repl. 1994). Thus, the fact that the deceit claim was brought by the individual appellants, and not the corporation, is of no consequence.

In appellants' complaint, their claim for deceit included the following factual allegations: (1) appellee falsely represented that the real property had been sold; (2) he knew this representation was false; (3) he misrepresented the status of the property with the intention that appellants would rely on his statement and act on it; (4) appellants were justified in relying on appellee's representation, as he told them he was working with the real property owner and would get back with them; and (5) appellants were damaged by the misrepresentation, as they voluntarily surrendered their rights in the equipment and fixtures necessary to operate their business.

Appellee further maintains that appellants' testimony in their depositions is inconsistent with their claim for deceit. Particularly, he points to appellant Calandro's testimony that she could not remember whether appellee told Suezaki and her that the real property had been sold, or whether he told them that the equipment had been sold. However, Suezaki was certain that appellee related that the building, not the equipment, had been sold. Thus, a question of fact remains as to whether appellee made the false representation alleged.

■ Appellee also contends that appellants' testimony in their depositions demonstrated that there was no genuine issue of fact on the element of damage. Specifically, appellee references Calandro's admission that she and Suezaki closed the business after Worthen Bank announced its plans to take the equipment, and that both the equipment and the real property were necessary to continue business operations. Appellee also refers to appellants' failure to pay or to negotiate the rent with the true owner, their failure to make an offer to purchase the equipment, and their fail-

ure to look for an alternate business location or to obtain financing. However, both Calandro and Suezaki stated that their actions or inactions were based on appellee's agreement to assist them in obtaining a new lease for both the real property and the equipment, and his repeated promises that he would "get back to them." In light of this testimony, the issue of whether appellants were damaged by the appellee's alleged misrepresentation is one of disputed fact that remains to be resolved.

For the foregoing reasons, we affirm the trial court's entry of summary judgment against appellants on their claims for malpractice and breach of contract. We reverse and remand the entry of summary judgment on appellants' claim for deceit.

Affirmed in part; reversed and remanded in part.

GLAZE, BROWN, and IMBER, JJ., concurring in part and dissenting in part.

ANNABELLE CLINTON IMBER, J., dissenting. I concur with affirming the trial court's entry of summary judgment against appellants on their claims for malpractice and breach of contract for the reasons stated in the majority opinion. However, I would also affirm the trial court's entry of summary judgment on appellants' separate claim for deceit.

The corporation U & Me, Inc., lost its capacity to sue when its charter was revoked for failure to pay franchise fees. Thus, any claims by the corporation for legal malpractice, deceit, or breach of contract have ceased to exist. *Schmidt v. McIlroy Bank and Trust*, 306 Ark. 28, 811 S.W.2d 281 (1991).

In order to state a cause of action for deceit by the individual appellants, and not the corporation, appellants must allege sufficient facts to support *each* of the five elements of the cause of action for deceit, including facts to support the resulting damage to the individual appellants. *Clark v. Ridgeway*, 323 Ark. 378, 914 S.W.2d 745 (1996).

Although appellants may have alleged sufficient facts to come within the first four elements of a claim for deceit, they have failed to allege sufficient facts under the fifth element — the resulting

damage to the individual appellants. Appellants allege in their complaint that as a result of appellee's misrepresentation, "they voluntarily surrendered *their* rights in the equipment and fixtures necessary to operate their business." (Emphasis added.) This allegation ignores the fact that all rights to the equipment and fixtures belonged to the corporation under the lease agreement.

The majority agrees with the well-settled rule that a corporation is an entity separate from its stockholders. *Shipp v. Bell & Ross Enterprises, Inc.*, 256 Ark. 89, 505 S.W.2d 509 (1974). And, as a separate legal entity distinct from its members, a corporation owns the corporate property and owes the corporate debt, with the corresponding right to sue as a creditor and to be sued as a debtor. *Arkansas Iron and Metal Co. v. First National Bank of Rogers*, 16 Ark. App. 245, 701 S.W.2d 380 (1995). As stated in *Red Bug Realty Co. v. South*, 96 Ark. 281, 291, 131 S.W. 340, 344 (1910):

> A stock holder does not acquire any estate in the property of a corporation by virtue of its stock; the full legal and equitable title thereto is in the corporation, and a cause of action for the recovery of its property or *for a violation of its rights thereto* is in the corporation.

(Emphasis added.)

I find no factual basis for the conclusory allegation in the complaint that the individual appellants were damaged by the alleged misrepresentation. Under the lease agreement, all rights in the equipment and fixtures necessary to operate the business belonged to the corporation. Consequently, the appellants would have sustained no damages in their individual capacities by the surrender of the corporation's rights to the equipment and fixtures. Thus, appellants have failed to allege sufficient facts to support the required element of damages in their individual cause of action for deceit.

I must therefore conclude that no genuine issue of material fact has been presented on the deceit claim brought by the individual appellants and that the complaint fails to state a cause of action for deceit. For the above-stated reasons, I would affirm the trial court's entry of summary judgment in its entirety.

GLAZE and BROWN, JJ., join in the dissent.