Jane A. CASH and Hugh Cash *v.* Rodolfo Espaldon LIM and
Pine Bluff Radiologists, Ltd.

95-168                                                908 S.W.2d 655

Supreme Court of Arkansas
Opinion delivered November 6, 1995

*Hodges & Hodges,* by: *David Hodges,* for appellants.

*Mitchell, Williams, Selig, Gates & Woodyard,* by: *R.T. Beard, III,* for appellees.

ROBERT L. BROWN, Justice. The appellants, Jane A. Cash and Hugh Cash, appeal from a summary judgment in favor of appellees Dr. Rodolfo Espaldon Lim and Pine Bluff Radiologists, Ltd. They contend that a genuine issue of material fact concerning causation in their medical malpractice claim remains to be resolved and that, accordingly, summary judgment was not appropriate under Ark. R. Civ. P. 56(c). We agree, and we reverse the summary judgment and remand the matter for trial.

On April 8, 1993, the Cashes filed a medical malpractice complaint against Dr. Lim and his radiology clinic, Pine Bluff Radiologists, Ltd., and others. The primary allegation was that Dr. Lim misread Jane Cash's April 16, 1991 mammogram and failed to diagnose a malignant tumor in her right breast, which resulted in a radical modified mastectomy of her right breast a year later. In 1992, Dr. Ronald Pritchard, another radiologist with Pine Bluff Radiologists, Ltd., read the film and noticed a suspicious density in Jane Cash's right breast. He recommended that an excision be done. Dr. Hagans, a breast surgeon in Little Rock, did the excision, and the biopsy subsequently revealed a cancerous condition. On April 29, 1992, Dr. Hagans performed the partial radical mastectomy on Cash.

After the complaint was filed, discovery ensued with the appellees taking the deposition of Dr. Hagans and the appellants taking the depositions of Dr. Lim and Dr. Aubrey Joseph, still

another physician with Pine Bluff Radiologists, Ltd. Dr. Lim and his radiology clinic then moved for summary judgment. They asserted that they were entitled to summary judgment as a matter of law and that the Cashes had the burden of proving medical malpractice and causation under Ark. Code Ann. § 16-114-206 (1987). They attached as exhibits to their motion four pages from Dr. Hagans's deposition, X-Ray Requests and Reports for Jane Cash for the years 1989 through 1992, and a discharge summary from Baptist Medical Center in Little Rock dated May 1, 1992. The Cashes responded that factual issues remained to be resolved and that § 16-114-206 of the Medical Malpractice Act was unconstitutional. The Cashes attached to their response the complete depositions of Drs. Lim, Joseph, and Hagans. They subsequently filed an affidavit by Jane Cash regarding the stress, anxiety, and financial harm occasioned by Dr. Lim's misdiagnosis.

On November 15, 1994, the circuit court issued a letter opinion and found: (1) that neither Dr. Hagans nor anyone else could state to a reasonable degree of medical certainty that the conduct of Dr. Lim or his clinic made a difference in the outcome of Jane Cash's condition; (2) that the Cashes have failed to demonstrate remaining justiciable issues relating to causation; and (3) causation is an element that the Cashes must prove. On December 7, 1994, the court granted summary judgment to Dr. Lim and his clinic.

Turning to the issue on appeal, this court has often summarized its standards for summary judgment review:

> In these cases, we need only decide if the granting of summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of the motion left a material question of fact unanswered. *Nixon* v. *H & C Elec. Co.*, 307 Ark. 154, 818 S.W.2d 251 (1991). The burden of sustaining a motion for summary judgment is always the responsibility of the moving party. *Cordes* v. *Outdoor Living Center, Inc.*, 301 Ark. 26, 781 S.W.2d 31 (1989). All proof submitted must be viewed in a light most favorable to the party resisting the motion, and any doubts and inferences must be resolved against the moving party. *Lovell* v. *St. Paul Fire & Marine Ins. Co.*, 310 Ark. 791, 839 S.W.2d 222 (1992); *Harvison* v.

*Charles E. Davis & Assoc.,* 310 Ark. 104, 835 S.W.2d 284 (1992); *Reagan* v. *City of Piggott,* 305 Ark. 77, 805 S.W.2d 636 (1991). Our rule states, and we have acknowledged, that summary judgment is proper when a claiming party fails to show that there is a genuine issue as to a material fact and when the moving party is entitled to summary judgment as a matter of law. Ark. R. Civ. P. 56(c); *Short* v. *Little Rock Dodge, Inc.,* 297 Ark. 104, 759 S.W.2d 553 (1988); *see also Celotex Corp.* v. *Catrett,* 477 U.S. 317 (1986).

*Oglesby* v. *Baptist Medical System,* 319 Ark. 280, 284, 891 S.W.2d 48, 50 (1995); *see also Forrest City Machine Works* v. *Mosbacher,* 312 Ark. 578, 583, 851 S.W.2d 443, 446 (1993); *Birchfield* v. *Nationwide Insur.,* 317 Ark. 38, 875 S.W.2d 502 (1994); *Young* v. *Paxton,* 316 Ark. 655, 873 S.W.2d 546 (1994).

■   Accordingly, it is the moving party who has the burden of presenting evidence to sustain a summary judgment, and all proof submitted must be viewed in the light most favorable to the opposing party. It is further well-settled that once the moving party establishes a prima facie entitlement to summary judgment by affidavits or other supporting documents or depositions, the opposing party must meet proof with proof and demonstrate the existence of a material issue of fact. *See Ford Motor Credit Co.* v. *Twin City Bank,* 320 Ark. 231, 895 S.W.2d 545 (1995); *Wyatt* v. *St. Paul Fire & Marine Ins. Co.,* 315 Ark. 547, 868 S.W.2d 505 (1994); *Bartlett* v. *Argonaut Ins. Co.,* 258 Ark. 221, 523 S.W.2d 385 (1975).

■   The matter of proximate causation is ordinarily one for the jury to resolve. *Skinner* v. *R.J. Griffin & Co.,* 313 Ark. 430, 855 S.W.2d 913 (1993); *Stacks* v. *Arkansas Power & Light Co.,* 299 Ark. 136, 771 S.W.2d 754 (1989); *Keck* v. *American Employment Agency, Inc.,* 279 Ark. 294, 652 S.W.2d 2 (1983). Hence, we turn to the proof submitted by Dr. Lim and his clinic to determine whether a genuine issue of material fact surrounding causation remains. Four pages from the deposition of Dr. Hagans were attached in support of the motion. Those pages read in part:

DEFENSE COUNSEL: Doctor, do I take it from the note of April the 5th, 1993, that you do not intend to testify regarding the standard of care for a radiologist prac-

ticing that specialty in Pine Bluff, Arkansas, or a similar locality in 1991 or 1992? Is that correct?

DR. HAGANS: I think that would be correct, since I'm not a radiologist.

DEFENSE COUNSEL: Sure. I understand. Now, this lady is your patient?

DR. HAGANS: Uh-huh.

DEFENSE COUNSEL: To a reasonable degree of medical certainty or probability, do I understand that while you feel the films may have been misread, you can't and will not state that it made any difference in the ultimate outcome? Is that correct?

DR. HAGANS: That is correct, because I don't think anyone can say that.

DEFENSE COUNSEL: I agree with you. And when I say the ultimate outcome, I'm talking about the entire course of events.

DR. HAGANS: Yes.

DEFENSE COUNSEL: Do you have any problem with that?

DR. HAGANS: No. I think it should be stated, as I told the patient, which is how all this may have occurred, is that, of course, it's best, if ever a patient has cancer, to remove that cancer as soon as you possibly can.

DEFENSE COUNSEL: Sure.

DR. HAGANS: In this particular case, she had something on her pictures that I think was there, you know, in days past, a year before we removed it. In retrospect, it's very easy to say that was cancer, you know, and as I told her initially, when I first showed her the films that told me that we needed to go biopsy this, and her question to me was, what do [sic] my pictures look like last year, and I showed the pictures to her on the view box, and it's very easy — you have these pictures here and you look at them — that this density was there, very easily seen the year

before. And this is something that she and her husband could see very easily. And I told them that you can't say that it was cancer at that point until you did a biopsy. So when we did a biopsy, then, yes, in retrospect, it was cancer.

So there had been a year there where the tumor may have been removed sooner. Would it have made a difference? Unknown, because she had such a good prognosis and has such a good prognosis at this time, that it's unknown if that year made a difference in her. But then the standard still remains that you should take something out as soon as you can.

DEFENSE COUNSEL: I understand that. But to a reasonable degree of medical certainty or probability, you can't state as we sit here today, even with the clarity of the retrospectroscope, that had the cancer been removed in 1991, that anything would be different?

DR. HAGANS: Absolutely.

DEFENSE COUNSEL: Okay. What is her prognosis, in your opinion, Doctor?

DR. HAGANS: It's a little difficult to say because of the fact that she quit chemotherapy

DEFENSE COUNSEL: Yes, sir.

DR. HAGANS: You know, if we had continued the chemotherapy as planned, her prognosis would have been well over 85 percent, 90 percent, that she would not have any trouble in the future. Now, with the chemotherapy not being completed, we don't have any real statistics to tell us, of course, you know, how much difference that's going to make. But that, of course, makes me very concerned that she didn't complete the therapy.

The full depositions of Drs. Lim, Joseph, and Hagans attached to the Cashes' response and Jane Cash's affidavit shed no additional light on the issue of causation.

The nub of this matter is whether the statements made by Dr. Hagans in his deposition establish sufficient proof of a lack

of causation so as to require the Cashes to respond with countervailing proof. The salient points of Dr. Hagans's deposition are these:

- Dr. Hagans believed that the 1991 film had been misread.

- He would not testify about the standard of care for radiology in Pine Bluff because he was not a radiologist.

- He did not believe anyone could state with a reasonable degree of medical certainty that the misreading of the film made any difference in the ultimate outcome.

- The standard is that it is best to remove a tumor as soon as you can.

- It was "unknown" whether removing the tumor sooner would have made any difference and he would not state that it would have.

We have held in the past that when the proof supporting a motion for summary judgment is insufficient, there is no duty on the part of the opposing party to meet proof with proof. *Wolner* v. *Bogaev*, 290 Ark. 299, 718 S.W.2d 942 (1986); *Collyard* v. *American Home Assur. Co.*, 271 Ark. 228, 607 S.W.2d 666 (1980). In *Wolner*, the plaintiff was in the hospital for prostatic surgery, and following surgery, he rose from a chair, fell, and broke his arm. He sued the hospital and his urologist, and the circuit court granted summary judgment in favor of both. We reversed with respect to the urologist and stated that it was the responsibility of the urologist, as the moving party, to prove the requisite standard of care and that he had conformed to that standard of care before the opposing party was required to present proof of the contrary. This he failed to do.

Similarly, in *Collyard* v. *American Home Assur. Co.*, supra, the issue was whether proof was sufficient to sustain summary judgment in a slip and fall case. The plaintiff (Collyard) gave a deposition in which she stated that she did not know how the water causing her fall got on the floor or how long it had been there. The defendant business (YMCA) where the plaintiff fell moved for summary judgment and attached the plaintiff's deposition in support of the motion. The circuit court granted the motion in favor of the defendant because the plaintiff had not

responded to the motion by countervailing proof. This court reversed and stated:

> The appellant [Collyard] alleged negligence on the part of the YMCA. The appellee [YMCA] never controverted this allegation by affidavit or other proof. It simply offered the deposition of Collyard that *she* did not know how the water got there or how long it had been there. The appellee and trial judge mistakenly presumed that the burden was on Collyard to come forward with additional proof on this issue. The burden in a summary judgment proceeding is on the moving party; it cannot be shifted when there is no offer of proof on a controverted issue. The object of a summary judgment is not to try the issues but to determine if there are issues of fact. *Ashley* v. *Eisele*, 247 Ark. 281, 445 S.W.2d 76 (1967).
>
> Whether the YMCA was negligent remained a fact in issue. If appellant had offered proof that the YMCA was not negligent, then Collyard would have had to produce a counter-affidavit or proof refuting the offer. But that was not the case. The appellee based its motion only on the deposition of Collyard, the plaintiff. The allegation in the complaint remained uncontroverted and Collyard should be permitted to present other evidence on that fact.

*Collyard*, 271 Ark. at 229-230, 607 S.W.2d at 668.

Viewing Dr. Hagans's testimony in the light most favorable to the Cashes, as we are required to do, we cannot say that it establishes a prima facie case of lack of causation or that it constitutes proof that would require countervailing proof from the Cashes. Dr. Hagans was admittedly not a radiologist or an oncologist but a breast surgeon in Little Rock. He stated twice that it is always best to remove cancer as soon as you can and mentioned once that this was the "standard." In seeming conflict with this, he also stated that he could not say as a medical certainty that the misreading of the 1991 film affected Jane Cash's outcome, or that anyone could make that statement. Though he believed the films were misread in 1991, he emphasized that he was not a radiologist and did not know the standard of care in Pine Bluff.

We conclude that Dr. Hagans's testimony falls into the

category of his not knowing one way or the other what the causative impact of misreading the 1991 film might have been. He could not be certain of the impact, but, by his own admission, this subject was outside of his area of expertise. Moreover, if anything, his testimony on causation was as favorable to the Cashes as to Dr. Lim and his clinic. In sum, Dr. Hagans's deposition does not rise to the level of sufficient proof on the issue of causation, and, as a consequence, offsetting proof by the Cashes was not required.

Reversed and remanded.