B.J. McADAMS *v.* Melissa CURNAYN; Tracy Warner;
Lisa Faulk, D.V.M.; W. Kendall Faulk, D.V.M.; Paul Winchester;
Shondra Harris and Vets & Pets

CA 06-70                                          239 S.W.3d 17

Court of Appeals of Arkansas
Opinion delivered September 13, 2006

[Rehearing denied October 4, 2006.*]

---

* BAKER, J., would grant rehearing.

Appellant, *pro se.*

*Wright, Lindsey & Jennings, LLP,* by: *Gary D. Marts, Jr.,* and *Regina A. Young,* for appellees.

J OHN B. ROBBINS, Judge. This is the second appeal of this lawsuit filed by appellant, B. J. McAdams, against a veterinary clinic and its employees[1] regarding harm appellant alleged came to his sixteen-year-old dog, Mr. T, during a clinic visit on February 14, 2000. Appellant contends that the trial court's grant of summary judgment to the defendants/appellees constitutes reversible error. Appellant additionally contends that the trial court erred in refusing to recuse on this case. We disagree with his assertions and affirm.

This cause of action arose from the following chain of events. On February 14, 2000, appellant took his dog, not to his "regular" veterinarian, Dr. Richard Allen, but to the Vets & Pets clinic, asking for a routine steroid shot. The clinic required that appellant leave his dog there for a few hours. Appellant alleged that when he brought his dog into the clinic, the dog could walk, but when he retrieved the dog hours later, it could not walk. Appellant alleged that someone at the clinic physically restrained his dog in such a way as to break or fracture the dog's spine. Appellant took the dog to specialist veterinarian Dr. Larry Nafe on March 7, 2000, and treated with Dr. Nafe intermittently for the dog's paralysis and other maladies until the dog died in December 2000 of organ failure.

Appellant first filed his "Complaint for Malpractice and Negligence" in May 2001, which was dismissed upon a defense motion pursuant to Arkansas Rule of Civil Procedure 12(b)(6).

---

[1] The named defendants were Melissa Curnayn, Tracy Warner, Dr. Lisa Faulk, Dr. W. Kendall Faulk, Paul Winchester, Shondra Harris, and Vets & Pets. All the defendants were either owners, employees, nurses, or otherwise agents of the clinic.

Appellant appealed the dismissal of his complaint, and we reversed and remanded the case to the trial court. *See McAdams v. Dr. Faulk*, CA01-1350 (April 24, 2002). Treating all the allegations in the complaint as true, as is required in review of a 12(b)(6) motion, we determined that appellant had sufficiently stated a cause of action for malpractice[2] and negligence on his own behalf, though we affirmed the dismissal of the action regarding the dog itself as a named party. *See id.*

After remand, appellant non-suited his case and refiled it alleging malpractice, res ipsa loquitur, and the tort of outrage, all based upon the same allegations of fact. In short, appellant asserted that his dog never walked again after the February 14, 2000 visit, which paralysis caused premature organ failure and death. When asked to name his expert witnesses via interrogatories, appellant responded with three: Dr. Richard Allen (the dog's regular doctor), Dr. Kendall Faulk (the defendant doctor who treated the dog on February 14), Dr. Larry Nafe (the dog's treating doctor for the remainder of the dog's life).

One deposition was taken, that of Dr. Nafe, and the defense moved for summary judgment based upon his sworn testimony. Dr. Nafe had no expert opinion regarding the medical care provided by Dr. Faulk or the clinic, or whether that standard was breached in the clinic visit of February 14, because he had not seen those clinic notes. However, Dr. Nafe did opine regarding the cause of the dog's inability to walk and ultimate death. Dr. Nafe stated that when he saw the dog in early March, blood tests confirmed that the dog's spine was infected with a staph bacteria, that the infection predated the February 14 visit, that the infection led to a breakdown in the vertebrae causing paralysis, and that despite eventually obtaining control of the infection by use of antibiotics, the dog ultimately suffered heart failure and secondary kidney failure that were the cause of death. Dr. Nafe stated that there was no known scientific connection between heart and kidney failure and a staph infection of the spine.

The defense moved for summary judgment stating that appellant had the burden of proving the standard of care, a breach of the standard of care, and proximate cause of injury or death due to the breach of the standard. The motion alleged that appellant

---

[2] Arkansas Code Annotated section 16-114-201(2) (Repl. 2006) includes veterinarians as medical care providers within the meaning of the Medical Malpractice Act.

had failed on all those requirements, pursuant to the expert witness, Dr. Nafe. The defense also moved for summary judgment on the res ipsa loquitur claim and the outrage claim, both depending upon the validity of the medical negligence claim.

At the hearing, appellant first asked the trial judge to recuse and to disqualify opposing counsel because he believed that there was an improper personal connection between the attorneys and the trial judge. Both requests were denied. Thereupon, the trial judge heard argument on the motion for summary judgment. Defense counsel restated their position that to support a malpractice claim, appellant bore the burden to demonstrate the standard of care, a breach of that standard, and that the breach caused injury. Defense counsel also stated that appellant had no cause of action for res ipsa loquitur because there was a reasonable explanation for why the dog could not walk and eventually died that was not connected to any alleged assault or harm on February 14, 2000. Lastly, defense counsel argued that the outrage claim failed because it was dependent upon the negligence claims.

During the hearing, appellant was allowed to explain his side of the story, arguing essentially that because he had prevailed on appeal as to the first dismissal, then the defense was not entitled to a summary judgment. Appellant restated that he believed his dog barked while kept in the clinic on February 14 and that someone there physically restrained or choked the dog to cause injury to his spine, causing him never to walk again. The trial court granted the motion for summary judgment, dismissing the complaint with prejudice, by an order filed on August 16, 2005. Appellant moved the trial court to reconsider, in which appellant asserted that Dr. Nafe was not his expert witness. Appellant added in his argument that the defense was barred by res judicata from trying to have his complaint dismissed. The trial court denied the motion to reconsider, and a timely notice of appeal followed that order.

We now consider the order granting summary judgment to the defendants. The standard of review on a grant of a summary judgment is markedly different than that for grant of a 12(b)(6) motion to dismiss. Summary judgment is to be granted by a trial court only when it is clear that there are no genuine issues of material fact to be litigated, and the movant is entitled to judgment as a matter of law. *Rice v. Tanner*, 363 Ark. 79, 210 S.W.3d 860 (2005). Once the moving party has established a prima facie entitlement to summary judgment, the opposing party must meet proof with proof to demonstrate the existence of a material issue of

fact. *Id.* On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered. *Id.* We review the evidence in a light most favorable to the non-movant, resolving any doubts and inferences against the movant. *Id.* We review the pleadings, affidavits, and other documents filed by the parties. *Id.*

In considering the medical malpractice claim, we are mindful that pursuant to Ark. Code Ann. § 16-114-209 (Repl. 2003), a plaintiff must provide, within thirty days of the filing of the complaint, an affidavit containing an expert opinion as to the standard of care in the particular specialty, the breach of that standard, and resulting injury. Failure to do so subjects the plaintiff to dismissal. However, this code section was amended in the 2003 legislative session to create this requirement; it does not apply to the present appeal because the alleged cause of action here occurred in 2000.

■ The law applicable to the present appeal requires that the plaintiff provide these three components of proof, and appellees argued in their motion challenging the existence of any of the three to support the medical negligence claim. Appellees did not present affirmative proof of the applicable standard of care required of a veterinarian in the February 14, 2000 visit or affirmative proof that the veterinarian complied with the standard of care. Indeed, Dr. Nafe refused to opine on Dr. Faulk's professional care without having the medical records relative to that day. Without proof supporting the motion for summary judgment on the applicable standard or breach thereof, appellant was under no duty to rebut those two aspects of medical negligence. *Compare Cash v. Lim*, 322 Ark. 359, 908 S.W.2d 655 (1995) (discussing the principle that the burden does not shift in the absence of the movant offering proof on a controverted issue). However, appellees did present affirmative proof through Dr. Nafe that the cause of the dog's inability to walk was a festering spinal infection that pre-dated the February 14 visit; that the defects in the dog's spine made visible on x-ray were due to the effects of infection on the spine and the effects of old age; and that the dog's ultimate death resulted from organ failure that Dr. Nafe said was unrelated to the infection. This constituted proof that challenged the proximate cause of appellant's allegation of harm — that his dog was rendered unable to walk and ultimately died from a physical trauma inflicted at Dr. Faulk's office that day.

The dissenting judge misconstrues appellees' contentions when she states that appellees never challenged the third requirement of proof — that being proximate cause of alleged harm. No doubt, appellees asserted that Dr. Nafe did not provide proof that the dog affirmatively suffered harm at the hands of the defendants that would not have otherwise occurred. Dr. Nafe's expert opinion about the cause of the dog's paralysis and ultimate death was in direct conflict with the allegation of physical injury inflicted on the dog at Vets & Pets. Therefore, Dr. Nafe provided proof that harm did not come to the dog as alleged by appellant's complaint.

In addition, we cannot agree with the dissenting judge's belief that Dr. Nafe's testimony was equivocal on the issue of what caused the dog's inability to walk and eventual death. The deposition was more than sixty pages long. Read as a whole, Dr. Nafe's opinion is definitive and within reasonable medical certainty. Dr. Nafe was not presented with the February 14 medical records. Instead, Dr. Nafe was given a history by Mr. McAdams about his suspicions of personnel man-handling his dog to keep the dog quiet. Mr. McAdams did not allege that Vets & Pets was responsible for introducing an infection into the dog.

Dr. Nafe examined the dog, x-rayed the dog's spine which showed marked changes in the cervical region, ran blood tests on him, and confirmed the presence of staph bacteria in large quantities in the blood stream. The blood test confirmed with certainty the statistical probability that staph was growing. Dr. Nafe did not want to do a myelogram, because this test required direct needle contact with the spine, which might spread the infection. Dr. Nafe opined with certainty that staph infection was the cause of the discospondylitis, and opined with certainty that the discospondylitis was the cause of the paralysis. When asked if there was any other possible cause of the paralysis, Dr. Nafe responded, "No, I felt that that was the cause." When asked if he had any suspicions that something happened to the dog three weeks earlier at Vets & Pets that would render the dog unable to walk, Dr. Nafe said that he could not know but that "on the radiographs, there was no evidence of fracture or dislocation or anything like that." Dr. Nafe stated that while there was a spine problem, it was a degenerative and infectious trauma predating the February 14 visit. In concluding the deposition, the following pertinent questions and answers were given:

Q. It's my understanding that the initial cause of the dog's problems walking, in your opinion, was attributable to the discospondylitis that you observed from the radiographs; is that correct?

A. That's correct.

Q. And then it's your opinion that the dog ultimately died from kidney failure secondary to the cardiomyopathy; is that correct?

A. That's correct.

Q. And it's your opinion that there's really no relation between those two conditions in this dog?

A. Well, you know, I mean, again, I don't know of any studies that have suggested any kind of relationship.

. . . .

Q. So the discospondylitis that you saw on the radiographs preceded February 14th, 2000 —

A. Right.

Q. — in your opinion?

A. Yes.

Q. So the infection had been building prior to that date?

A. Right, which is typical.

. . . .

He had a severe spinal cord injury, and so that spinal cord was damaged, and it was damaged severely. And that's the problem with him is his was much worse than many of them.

Q. But the damage was attributable to the discospondylitis?

A. Right.

Q. Not to some sort of external trauma?

A. Not that I can tell. Right. He had underlying disease present in his spine.

This sworn testimony rebuts appellant's allegation that Vets & Pets fractured or broke his dog's neck, leading to its paralysis and death.

■ With Dr. Nafe's expert opinion regarding lack of proximate cause, appellant was duty bound to meet proof with proof, which appellant did not produce. Conclusory allegations would no longer suffice. Therefore, no material question of fact existed on causation, rendering summary judgment appropriate. The trial court did not err in entering summary judgment and dismissing that count.

■ Likewise, appellees were entitled to summary judgment on the claim of res ipsa loquitur. This doctrine may apply in medical malpractice cases if the essential elements are present. *See Schmidt v. Gibbs*, 305 Ark. 383, 807 S.W.2d 928 (1991). The general requirements are a duty to the plaintiff to use due care, an accident caused by something under the defendant's control, the existence of an accident that in the ordinary course of things would not otherwise occur if the defendant used proper care, and an absence of evidence to the contrary. *See id.* In this instance, the missing element of plaintiff's proof here is the "absence of evidence to the contrary." Appellant's allegation that his dog suffered a traumatic injury to the spine causing paralysis and death was refuted by Dr. Nafe's explanation to the contrary. Appellant was required to meet proof with proof to create a question of fact on this point, and he failed to do so. Summary judgment was appropriate for the res ipsa loquitur claim.

■ As to the tort of outrage, it was wholly dependent upon there being a valid negligence claim. Moreover, the tort of outrage is an extremely narrow tort, rarely recognized in Arkansas caselaw. It requires extreme and outrageous behavior not to be tolerated in a civilized society; it encompasses acts beyond all bounds of decency. *See Crockett v. Essex*, 341 Ark. 558, 19 S.W.3d 585 (2000). Given that the negligence claims were unsupported by any rebutting proof on the motion for summary judgment, we affirm the entry of summary judgment on the tort of outrage as well.

■ Appellant also raises on appeal an allegation that the trial court was biased against him and should have recused. He asks that we consider this impropriety in connection with the grant of summary judgment. We are not persuaded. The vast majority of instances appellant cites as evidence of bias against him by the trial judge are events outside the record on appeal. We do not consider

evidence that is not included in the record on appeal. *See Smith v. State*, 343 Ark. 552, 39 S.W.3d 739 (2001); *Coulter v. State*, 343 Ark. 22, 31 S.W.3d 826 (2000). To the extent that appellant claims that the trial judge should have recused, we review that decision for an abuse of discretion. *See Searcy v. Davenport*, 352 Ark. 307, 100 S.W.3d 711 (2003). The decision whether to recuse is a matter left to the conscience of the trial court. *Id.* We discern no abuse of discretion in this instance. The fact that a judge has ruled against a party in prior litigation is not sufficient to establish bias, nor is the filing of a complaint by the movant with the Judicial Disability Commission. *Id.* Appellant has failed to present a record on appeal demonstrating that the trial judge was infected with such bias that he should have recused. We affirm this point.

Affirmed.

PITTMAN, C.J., BIRD, and GLOVER, JJ., agree.

CRABTREE, J, concurs.

BAKER, J., dissents.

TERRY CRABTREE, Judge, concurring. I am in full agreement with the decision to affirm this case. I write separately to express but one concern. I am disturbed that the Medical Malpractice Act applies to veterinarians. Ark. Code Ann. § 16-114-201(2) (Repl. 2006). Although I have a duty to apply the law as written, and have done so in this case, I sincerely question the propriety of applying the Act to veterinarians. In my opinion, it is inappropriate to apply the same restrictions of the Act to veterinarians because the dynamics of a lawsuit for an injured pet are not as devastating as that of a patient under the Act. Further, notice of an injury to an animal may not manifest itself in the short time required by the Act. In my view, it is mixing apples with oranges.

KAREN R. BAKER, Judge, dissenting. I am aware that this case involves the loss of a seventeen-year-old dog. Common sense tells us that the loss of this pet was inevitable, perhaps even imminent. Despite this, our legislature has mandated the application of our medical malpractice laws to the practice of veterinarian medicine, precluding us from relying on the general premise that old dogs die. Furthermore, this case is before us on appeal from the grant of a summary judgment motion. Our procedures and case law dictate the trial court's duty to review the pleadings, discovery responses, and evidence presented to determine whether the moving party is entitled

to judgment as a matter of law. Our responsibility to review the trial court's decision is no less onerous. Unfortunately, the majority's analysis fails to fulfill this obligation.

In their motion for summary judgment, appellees stated that they were entitled to summary judgment because "[appellant's] expert witness, Dr. Nafe, did not render an opinion as to the standard of care of veterinarians in the locality. Dr. Nafe also did not render an opinion as to whether the defendants breached the standard of care or whether [the dog] suffered injuries that would not have otherwise occurred." In their reply to appellant's response to their motion for summary judgement, appellees repeated their position that Dr. Nafe did not render an opinion and affirmatively stated that their "motion for summary judgment incorporates the deposition testimony of Dr. Nafe who testified that he did not have an opinion as to Dr. Faulk's treatment of [the dog]. [Appellees'] motion for summary judgment requests judgment in favor of [appellees], because [appellant] has failed to produce an expert who will offer the requisite expert testimony."

The first two paragraphs of appellees' reply also accurately summarize the arguments presented on appeal regarding the claims of malpractice:

1.  In the defendants' motion for summary judgment, the defendants requested judgment in their favor on plaintiff's claims for negligence and medical malpractice because plaintiff's expert witness, Dr. Nafe, did not render an opinion as to the standard of care of veterinarians in the locality at his deposition. Dr. Nafe also did not render an opinion as to whether the defendants breached the standard of care or whether [plaintiff's/appellant's dog] suffered injuries that would not have otherwise occurred.

2.  In response to defendants' motion for summary judgment, plaintiff merely states that "Dr. Nafe was not singled out as the only expert witness." . . . However, plaintiff did not produce the testimony of an expert witness in response to defendant's summary judgment motion that would establish the existence of the elements essential to plaintiff's case, and on which plaintiff bears the burden of proof at trial.

The majority correctly concludes that the appellees failed to offer proof of the applicable standard of care required of a veterinarian in the February 14, 2000 visit or affirmative proof that the

veterinarian complied with the standard of care. That conclusion is consistent with appellees' statement that Dr. Nafe did not render an opinion as to whether the appellees had breached the standard of care. However, the majority then holds that appellees did present sufficient proof to "challenge the proximate cause of appellant's allegation of harm — that his dog was rendered unable to walk and ultimately died from a physical trauma inflicted at appellees' office that day." This holding directly contradicts appellees' admission that Dr. Nafe "did not render an opinion as to . . . whether [appellant's] dog suffered injuries that would not have otherwise occurred." The majority finds that appellant failed to meet proof with proof as to proximate cause, when appellees offered no proof for appellant to meet. In fact, appellees never moved for summary judgment on the issue of proximate cause.

Appellees clearly recognized that any argument regarding proximate cause must fail because they did not present expert proof regarding causation that was stated within a reasonable degree of medical certainty or probability. *See Ford v. St. Paul Fire & Marine Ins. Co*, 339 Ark. 434, 5 S.W.3d 460 (1999). Moreover, Dr. Nafe's deposition testimony indicates that he was painfully aware of this inability to provide such certainty. Dr. Nafe testified regarding the reason the dog was presented to him:

> [The dog] was paralyzed in all four legs, what we call tetraparesis. He had some other problems. You know, he was 16, so he had some other problems. But that's not really why he was presented to me. So at that time he had neurological changes and reflex changes that suggested that his problem was in his low cervical spinal cord.

> At that time he had some low neck pain. We radiographed the dog at that time. Radiographed the spin, the cervical spine while he was awake. And he was a little painful that day, so we didn't get perfect radiographs. But we had enough to show that he had some marked changes between his sixth and seventh cervical vertebra and between his seventh cervical vertebra and his first thoracic vertebra. In addition to that, he had some generalized osteoporosis in his spine that was noted.

When asked if he could identify what the changes in the vertebra were, Dr. Nafe responded "that he *probably* had a problem called discospondylitis." (Emphasis added.) Dr. Nafe then explained that a urine test can be used to identify the discospondylitis presence in "about 50 percent of the dogs that we think have

active discospondylitis. . . ." Dr. Nafe performed a urine test, but the test did not culture the discospondylitis organism. Instead, the test "cultured a Staph. aureus" and Dr. Nafe explained that, in his practice, the Staphylococcus organism causes about fifty percent of the discospondylitis infections in the dogs he treats. With no positive culture for the discospondylitis infection, and able to correlate the presence of the Staphylococcus organism to only one-half of the dogs who have the discospondylitis infection, it is understandable as to why Dr. Nafe was reticent to say with any degree of medical certainty that the dog suffered from discospondylitis.

When appellees' counsel asked Dr. Nafe to describe generally how a dog can get a Staphylococcus infection, not a question specifically directed to how this dog came into contact with the organism, Dr. Nafe responded, "Well, you know, again, it's a little bit of *supposition*." (Emphasis added.) Then, counsel for appellees asked the direct question: "And was there anything in the history given to you by Mr. McAdams or anything that you were able to find by other means to give you an opinion as to the cause of the Staph. infection in [the dog]?" Dr. Nafe's response: "No." His response was "no." Nothing in the history and nothing he was able to determine by other means gave him an opinion as to the cause of the Staphylococcus infection. He did muse a bit about possible ways the bacteria may have entered the dog's system. Nevertheless, he was clear that he had no opinion as to the cause of the Staphylococcus infection.

When asked if he was "able to formulate an opinion as to why [the dog's] immune system was not able to resist the Staphylococcus infection, Dr. Nafe explained that *"it's a guesstimate*. But overall, if you took a hundred [dogs], *probably* a 16-year-old dog *probably* isn't going to have a great immune system." (Emphasis added, again.)

In response to the question as to whether Dr. Nafe had determined what caused the dog's paralysis, he stated, "Well, *again, through supposition* . . . . (Emphasis added.) Appellees' counsel followed up with the following query: "So it was your *suspicion* that the problem with the dog's paralysis was being caused by the discospondylitis that we talked about earlier, is that correct." (Emphasis added.) Dr. Nafe confirmed that his suspicion was that the paralysis was secondary to the suspected discospondylitis infection. Dr. Nafe further explained that the definitive medical

diagnostic procedure to identify a discospondylitis infection would be a mylegram and stated that this diagnostic procedure had never been performed.

Counsel for appellees also specifically asked Dr. Nafe if there was "anything from your observation or treatment of the dog to make you *suspicious* of an event or something happening to the dog on February 14th that would render him unable to walk?" (Emphasis added.) His response, "No, but I'm seeing the dog three weeks later. I mean, *that would be impossible for me to know. . . .* And there was sufficient evidence that there was a problem in the spinal cord — mean in the spine. *No, but again, that's impossible for me to say.*" (Emphasis added.)

When counsel asked Dr. Nafe whether or not he could attribute the dog's inability to walk to the dog's eventual heart failure, identified by Dr. Nafe as cardiomyopathy, the doctor replied, "No. I mean, *I don't know* that you can be definitive about that *because nobody has really done much studies* in geriatric animals with cardiomyopathy." (Emphasis added.)

Dr. Nafe also cited a lack of clinical studies in answering whether he had an opinion as to whether the dog's eventual kidney failure, secondary to the cardiomyopathy, was related to the discospondylitis: "Well, you know, I mean, again, *I don't know of any studies that have suggested any kind of relationship.* What happens in older animals is they get one problem. And then it kind of, you know, leads to other problems, and not necessarily in a direct correlation." (Emphasis added.) Dr. Nafe continued: "Now whether or not they were going to occur anyway, . . . *I don't know.* . . . *But my guess in this case would be* that there is no direct link that I can see." (Emphasis added.)

Given this evidence, I understand why appellees admit that Dr. Nafe could not negate appellant's allegation regarding causation. The best appellees could say was that appellant could not bring his case to trial because the expert that appellees deposed did not have an opinion. Dr. Nafe did not give an opinion as to whether the spinal cord injury would have occurred even without the alleged choking because, as Dr. Nafe stated, his examination was too remote in time to make that determination. As Dr. Nafe said, the veterinarian to ask would have been Dr. Allen, another expert listed as an expert witness by appellant.

What I do not understand is how the majority determined that this testimony established that appellees were entitled to judgment as a matter of law. The majority's position is even more

perplexing given its premise that appellees proved as a matter of law that the dog died from an infection that had been present prior to the spinal cord injury and the spinal cord injury was due to the effects of infection and old age. Dr. Nafe testified that the dog suffered a "severe spinal cord injury" and that the spinal cord was "damaged severely." The following exchange during Dr. Nafe's testimony provides evidence that the underlying cause of the dog's inability to walk, even the suspected infection, could be caused by trauma:

Q. Could the fact that this dog was walking at one period of time in the course of the day and then not walking at another period of time in the course of a day — could that be indicative of the sudden onset of this discospondylitis?

A. Yeah. Now when you have an animal that, say, is fairly normal, and then he goes down from the disco, then probably something has occurred. And it doesn't have to be necessarily a lot because of the instability that becomes present. So, you know, it doesn't necessarily require much.

And that area will be predisposed to injury because of the instability. So in other words, it could be caused by, you know, trauma of some type. The looseness there would predispose that dog to injury, or it can happen from the dog rolling over to get up in the morning. I mean, it could be either direction.

Q. The sudden onset could be caused by trauma?

A. Trauma.

As the majority recites, "On appellate review, we determine if summary judgment was appropriate based on whether the evidentiary items presented by the moving party in support of its motion leave a material question of fact unanswered." *Rice v. Tanner*, 363 Ark.79, 210 S.W.3d 860 (2005). We review the evidence in a light most favorable to the non-movant, resolving any doubts and inferences against the movant. *Id.*

Dr. Nafe acknowledged that his opinion could be nothing more than suspicion and supposition. The one thing he was unequivocal about was that this dog had suffered a severe spinal cord injury. He also acknowledged that it was possible that this dog's sudden inability to walk could have been caused by trauma.

Dr. Nafe testified that even the sudden onset of the dog's underlying infection could have been caused by trauma. Given this evidence it is not surprising that appellees never argued that the expert testimony they relied upon left no material question of fact unanswered. Instead they argued that appellant had failed to "produce the testimony of an expert witness . . . that would establish the existence of the elements essential to the plaintiff's case." Appellant had no duty to do so, and the majority has failed in its duty to properly review this case.

Accordingly, I dissent.